701 P.2d 198

**Maxine PERRON and Marlene Pendleton, Plaintiffs-Appellants, Cross-Respondents,**

v.

**William HALE and Nadine Hale, husband and wife; A. Leon Blaser and Teresa A. Blaser; and Richard K. Barrell and Patricia Barrell, Defendants-Respondents, Cross-Appellants.**

**No. 15156.**

Supreme Court of Idaho.

March 28, 1985.

Robert M. Tyler, Jr., of Elam, Burke & Boyd, Boise, for plaintiffs-appellants.

Jon N. Wyman, of Wyman & Wyman, Boise, for defendants-respondents.

HUNTLEY, Justice.

The buyers of a house have appealed the trial court's judgment validating an earnest money agreement and granting specific performance to the sellers. Finding no error, we affirm.

On October 2, 1980, plaintiffs entered into an earnest money agreement to purchase a house newly built in Cascade, Idaho, from defendants Blaser and Barrell. At this time, plaintiffs were visiting Cascade from their residence in Nevada, and they stayed two nights in the house. The buyers, sellers and defendant Hale, the realtor, were all present at the meeting in which the agreement was executed. The agreed purchase price was $56,000. During the meeting the parties discussed the possibility that buyers could accomplish a non-taxable exchange, using Nevada property for which plaintiff buyer Perron had received an oral offer to sell to a third party prior to visiting Cascade. Also discussed in general terms were some characteristics of the Cascade home. The house was conventionally built on the lower level, but the upper level walls were made of a new product and process consisting of a sandwich of materials including polyurethane, 2 x 4's, wallboard, and stucco siding. The walls supposedly had a high degree of insulating capability. Buyers paid $500 as earnest money to be held in trust by the realtor. The agreement provided in paragraph 1(b):

"Balance of purchase price to be paid as follows: [the remainder was handwritten]

"Subject to buyers' talking to accountant on exchange.

"Buyers will cash out house."

The closing of the transaction was to be within 30 days, but was extended by the parties to December 1, 1980.

Buyers returned to Nevada and consulted with their accountant to find that the properties were not "like kind" and therefore no tax advantage would result from an exchange. The buyers later sold the Nevada property for $50,000 cash sometime in November or December of 1980. Also in November, 1980, the parties began negotiating a financing arrangement on the Cascade house. On November 24, 1980, the buyers paid $13,500 toward the purchase price, intending to assume a $42,000 loan on the property. At this time the sellers had only a $37,000 construction loan on the house. Later in December the financing bank loaned another $5,000 to sellers. It was buyers' intention to refinance the house once the interest rates dropped. Also in November, the buyers paid $6,099 to the sellers, separate and apart from the purchase agreement, to partially remodel and finish the downstairs of the house. After receiving the proposed loan assumption through the mail on January 19, 1981, the buyers objected by telephone to the realtor. The objection was that there were two deeds of trust totaling $42,000, one for $37,000 at 16.25% and one for $5,000 at 17.75%, rather than the one deed of trust at 14.5% interest which buyers claimed they were to receive. The realtor agreed to see that the problem of the interest rates was corrected. In a letter dated March 18, 1981, the realtor told the buyers that sellers agreed to give a refund or credit in the amount of $492.85 to offset the higher interest.

In a letter dated May 14, 1981, buyers' counsel notified sellers that "they [were] no longer interested in purchasing the property." In July, 1981, buyers sued to rescind the earnest money agreement and "oral" financing agreement. Buyers also sought the return of the $14,000 paid on the purchase and $6,099 paid on the remodeling. Various reasons were given as a basis to rescind, including failure of the proposed exchange, misrepresentation of financing terms, dimming of lights in the house when a hair dryer was turned on, unfinished work, and workmen staying in the house during May, 1981. Prior to trial the complaint was amended to allege that the house was "not constructed according

to plans and specifications" and was unfit for occupancy.

At trial the buyers asserted that the exchange of Nevada property was a condition precedent to the earnest money agreement and the sellers materially breached the oral financing agreement allegedly entered into subsequent to the earnest money agreement. Sellers asserted that the earnest money agreement contemplated a cash sale, but that sellers allowed buyers to attempt an exchange or assumption of financing merely as an accommodation. Experts for both sides testified of the existence and non-existence of construction defects. The trial court found that: the parties intended no condition precedent in the exchange; they intended the entire balance to be paid at closing; the parties never reached a subsequent agreement on financing; the house was substantially completed at closing with only minor items left to be completed; and the alteration and remodeling had so altered the house that it would be inequitable to return it to the sellers. Therefore, the trial court ordered specific performance of the purchase agreement. The court also granted reduced attorney fees to sellers finding much of the evidence in the 10-day trial (originally scheduled for 2 days) was redundant and repetitive. Paragraph 14 of the earnest money agreement was the basis for the award of attorney fees.

Buyers have appealed the judgment of the district court. Sellers have cross appealed the reduced attorney fee award.

■ We first consider the handwritten clause in the earnest money agreement which states, "Subject to buyers talking to accountant on exchange. Buyers will cash out house." Buyers argue that the only logical interpretation of the handwritten clause is that buyers would purchase the house only if an exchange could be arranged with the approval of their accountant, and therefore the exchange was a condition precedent. However, another reasonable interpretation is that buyers would pay cash for the house, with the cash being

generated if possible through an exchange, and therefore the only precondition, if any, was that buyers would merely consult their accountant on the feasibility of an exchange. Whether a financing arrangement to a purchase agreement "amounts to a condition precedent is generally dependent on what the parties intend, as adduced from the contract itself. [*McMinn v. Holley*, 86 Idaho 186, 192, 384 P.2d 229, 231 (1963)]." *Mecham v. Nelson*, 92 Idaho 783, 787, 451 P.2d 529, 533 (1969). The language in the subject contract is ambiguous and cannot be resolved by reference to the "contract itself." Therefore, parol evidence of "the surrounding circumstances at the time the contract was executed, and the purpose sought to be accomplished by the contract" may also be used to determine the intentions of the parties. 81 A.L.R.2d 1338,[1] 1340.

■ The trial record contains voluminous testimony from the five persons present at the execution of the contract. Each person testified of the surrounding circumstances and his or her purpose in entering into the contract. Based on this parol evidence and the writing contained in the contract itself, the trial court made a factual determination that "both parties believed that the buyer would pay on closing the balance owed—no matter what the accountant said. The plaintiffs had an opportunity to talk to their accountant." We have reviewed the record and find the trial court's interpretation to be supported by substantial competent evidence. Since there was no condition precedent that an exchange be made, the earnest money agreement was binding upon the parties.

■ We next consider whether buyers were entitled to rescission of the earnest money agreement on the basis that sellers allegedly entered into and breached a subsequent financing agreement. "Generally, the determination of the existence of a sufficient meeting of the minds to form a contract is a question of fact to be determined by the trier of fact." *Shields & Co.,*

1. 81 A.L.R.2d 1338 was cited with approval in both *McMinn* and *Mecham.*

*Inc., v. Green,* 100 Idaho 879, 882, 606 P.2d 983, 986 (1980). The same rule would be applicable to the present case in which the parties attempted to negotiate a modification of the original agreement. The trial court, as the trier of fact, determined that a modified financing "agreement was never reached." That finding was supported by substantial competent evidence, and we need not reach the question of breach of the alleged modification. Therefore, the trial court did not err in concluding that buyers breached the earnest money agreement by failing to perform and that they were not entitled to rescind the agreement.

■ We next consider whether, as a result of buyers' breach, sellers are entitled to the remedy of specific performance. The general rules of the common law are that: (1) a party is entitled to the equitable remedy of specific performance when damages, the legal remedy, are inadequate; (2) because of the perceived uniqueness of land, it is presumed that damages are inadequate in an action for breach of a land sale contract, and the non-breaching party need not make a separate showing of the inadequacy of damages; (3) the remedy is equally available to both vendors and purchasers; and (4) additionally, the appropriateness of specific performance as relief in a particular case lies within the discretion of the trial court. *E.g.* Cribbet, Principles of the Law of Property, p. 144 (2d ed. 1975); 71 Am.Jur.2d Specific Performance, § 112 (1973); *Scogings v. Andreason,* 91 Idaho 176, 180, 418 P.2d 273, 277 (1966). Notwithstanding these general rules, this Court has denied specific performance of a land sale contract when the "reasons assigned by the authorities for the rule applied in land contract cases are not convincing when applied to the facts of the case...." *Suchan v. Rutherford,* 90 Idaho 288, 295, 410 P.2d 434, 438 (1966) (vendor of farm denied specific performance). This denial of specific performance in particular land sale contracts cannot be distinguished on the basis that the remedy is not as readily available to vendors as it is to purchasers. Although that distinction has been made on one occasion, *see Mallory v.*

*Watt,* 100 Idaho 119, 123, 594 P.2d 629, 633 (1979), the *Suchan* rule has been equally applied to deny specific performance to proposed purchasers. *See Watkins v. Paul,* 95 Idaho 499, 511 P.2d 781 (1973) (holders of option to purchase land denied specific performance based upon *Suchan).* Appellants cite only one case for the proposition that specific performance should not be generally available to vendors. *See Manning v. Bleifus,* 272 S.E.2d 821 (W.Va.App. 1980). Without citing authority, *Manning* implies *in dicta* that specific performance is not readily available to vendors. However, the case ultimately concluded that the issue of specific performance was not properly raised by the parties. Therefore, we do not find the case cited by appellants to be persuasive. The overwhelming weight of authority states that specific performance is as freely available to vendors as it is to purchasers. *E.g., Tombari v. Griepp,* 55 Wash.2d 771, 350 P.2d 452, 454–55 (1960) (string cite of treatises and cases); 71 Am.Jur.2d Specific Performance, § 112 (1973); Cribbet, Principles of the Law of Property, p. 144 (2d ed. 1975). Therefore, *Suchan v. Rutherford, supra,* is not authority for the proposition that specific performance is unavailable to vendors. Rather, *Suchan* has been most often cited by this Court and others for the proposition that even though the case involves a land sale contract, specific performance may nevertheless be denied in particular circumstances within the discretion of the court. *Scogings v. Andreason,* 91 Idaho 176, 180, 418 P.2d 273, 277 (1966); *Shakey's, Inc. v. Martin,* 91 Idaho 758, 766, 430 P.2d 504, 512 (1967); *Watkins v. Paul,* 95 Idaho 499, 501, 511 P.2d 781, 783 (1973); *Mallory v. Watt,* 100 Idaho 119, 123, 594 P.2d 629, 633 (1979). *See also* 81 C.J.S. Specific Performance, § 77, p. 893, nn. 97, 2; 71 Am.Jur.2d Specific Performance § 113, p. 146, n. 96; 45 U.Chi.L.Rev. 351, 355–56, n. 20 (1978).

■ *Suchan v. Rutherford, supra,* states that "in each case equity must consider all factors affecting the availability of the remedy [of specific performance]." 90 Idaho at 298, 410 P.2d at 440. The factors

which *Suchan* considered in denying specific performance were that: common irrigated farmland in Idaho is not necessarily unique and the market value is easily ascertainable; denial of specific performance would not deprive vendor of investment since the contract was not for cash, but a long term installment contract; specific performance of the long term contract would be difficult to enforce and might be unjust, oppressive or unconscionable over the long term of the contract; and, vendor was living on the property and there were no rental, depreciation, or enhancement values to complicate a damages formulation since vendor had sued only thirty-seven days after execution of the contract. Based on these particular facts, the court concluded that damages were adequate and enforcement of specific performance would be inequitable. In *Watkins v. Paul, supra,* the court denied specific performance to the holders of an option since the proposed purchasers had no "unique purpose" in obtaining the land but merely wanted to "resell it for profit." 95 Idaho at 501; 511 P.2d at 783.

None of the factors in *Suchan* or *Watkins,* or similar factors, exist in the present case. Rather, the evidence presents other factors which militate for the grant of specific performance. The house is of a unique construction. It is located in a seasonal recreation area with a limited marketing season. The trial court found that "the house has deteriorated during this litigation because of [the] lack of occupancy ... [which] is entirely the responsibility of the [buyers]." This deterioration would affect the market value and, in addition, a rental value would complicate a damages formulation. The buyers had the lower level of the house altered and partially finished to their particular desires, and buyers had done substantial damage to the walls upstairs and down while attempting to discover building defects. The agreement was for a cash sale which can be easily enforced. The buyers presented no evidence that specific performance would be unjust or oppressive. The evidence shows that at least one of the buyers had bought and sold property several times, and the buyers apparently had sufficient cash (the proceeds from the sale of the Nevada property) to purchase the house. Faced with these factors, we conclude that the trial court properly exercised its discretion in granting specific performance to the sellers. *See Suchan v. Rutherford, supra.*

 We also uphold the trial court's award of attorney fees to seller. The trial court awarded only $2,500 as a reasonable fee because it felt much of the litigation was repetitive and redundant. We find no abuse of discretion.

Judgment affirmed. Costs and attorney fees on appeal are awarded to respondents pursuant to paragraph 14 of the purchase agreement.

DONALDSON, C.J., BISTLINE, J., and WALTERS, J. Pro Tem., concur.

SHEPARD, J., dissents without opinion.