**In re Judith Graeber YOUNG, Debtor.**

**TKO PROPERTIES, LLC, Jean Komai–Green, William F. Graeber, Jr. and Carl Graeber, Plaintiffs,**

**v.**

**Judith Graeber YOUNG, personally, and as Personal Representative of the Estate of William F. Graeber, and John Krommenhoek, Trustee, Defendants.**

**Bankruptcy No. 97–01369.
Adversary No. 97–6218.**

United States Bankruptcy Court,
D. Idaho.

Nov. 18, 1997.

Appellant R–Tek from enforcing the provision against Torres personally.

Jed Manwaring, Evans, Keane, Boise, ID, for Plaintiff TKO Properties, LLC.

Jon R. Cox, Davison, Copple, Copple & Copple, Boise, ID, for Plaintiff Jean Komai–Green.

Loren Ipsen, Ellsworth, May, Sudweeks, Stubbs, Ipsen & Perry, Boise, ID, for Plaintiffs William Graeber, Jr. and Carl Graeber.

D. Blair Clark, Ringert, Clark Chartered, Boise, ID, for Defendant Judith Graeber Young.

Ramona S. Neal, Givens Pursley & Huntley, Boise, ID, for Defendant John H. Krommenhoek, Trustee.

## MEMORANDUM OF DECISION

JIM D. PAPPAS, Chief Judge.

I. Background.

In this adversary proceeding, Plaintiff TKO Properties, LLC ("TKO") seeks specific performance of a contract for the purchase and sale of real property it entered into with William F. Graeber ("Graeber") and Defendant Judith Graeber–Young ("Young"), the Debtor in bankruptcy. TKO also seeks to void a transfer of property from Graeber or his probate estate to Young as a fraudulent transfer pursuant to Idaho Code §§ 55–906, 55–913, and 55–914. This matter is before the Court on the motion of the Defendant John Krommenhoek, the Chapter 7 trustee ("Trustee"), for judgment on the pleadings as to whether: (1) TKO may avoid the transfer of property in question; (2) Trustee may sell the property; and (3) TKO's only remedy is the attachment of a lien to the proceeds from the sale of property by Trustee. Plaintiff also moves for partial summary judgment on the issues of whether: (1) Young had an interest in the property; (2) TKO was a secured and an unsecured creditor of Grae-

ber and his probate estate; and (3) the transfer of property made by Young was made without receiving reasonably equivalent value.

## II.  Standard of Law.

Trustee's motion for judgment on the pleadings is governed by Rule 12(c) of the Federal Rules of Civil Procedure, made applicable here by F.R.B.P. 7012(b).  However, since the Court has been asked by all parties to review matters outside the pleadings, including certain affidavits, the motion will be treated as one for summary judgment, as provided in Rule 56 of the Federal Rules of Civil Procedure, made applicable here by F.R.B.P. 7056.  Plaintiff also moves for partial summary judgment.

Summary judgment is appropriate if, after viewing the evidence in the light most favorable to the non-moving party, there is no genuine issues of material fact remaining and the moving party is entitled to judgment as a matter of law.  F.R.B.P. 7056; *State Farm Mutual Auto. Ins. Co. v. Davis,* 7 F.3d 180, 182 (9th Cir.1993); *FSLIC v. Molinaro,* 889 F.2d 899, 901 (9th Cir.1989).

## III.  Facts.

The following factual allegations appear to be undisputed and will be assumed to be true for purposes of disposing of the motions.

On March 22, 1997, TKO executed a written contract with Graeber and Young wherein it agreed to purchase from them the real property and improvements located at 203 Main Street, Boise, Idaho.  The stated purchase price for the property was to be $430,-000.  Under the terms of the agreement, upon purchasing the property, TKO was to lease a portion of it back to Graeber.  Lease terms were never settled by the parties as contemplated in the agreement, and the sale was never closed.  On April 25, 1997, TKO filed suit in state court seeking specific performance of the contract.

On April 30, 1997, under authority of a durable power of attorney granted her by Graeber, Young transferred title to a portion of the subject property to herself.  The property described in the transfer included parcels representing an alleyway and an abandoned street.  On May 5, 1997, Graeber died.  He left a will devising his interest in the property in equal one third shares to his two sons, Carl Graeber and Bill Graeber Jr., and to Young.

Two days after Graeber's death, Young filed a Chapter 13 bankruptcy petition.  On May 9, 1997, TKO purchased and obtained an assignment of the existing deed of trust on the property subject to the land sale contract.  A correction deed was executed by Young on May 14, 1997, in order to transfer title to the remaining portions of the property to herself.  On June 20, 1997, Young's Chapter 13 case was converted to a case under Chapter 7.  Mr. Krommenhoek was appointed Chapter 7 Trustee.

At one time in the distant past, Young and Graeber were married, then divorced in 1966.  In 1989, they resumed their relationship, but the parties dispute whether Young, at the times relevant here, was Graeber's common law wife.  There is a dispute concerning the effect their relationship and the various transfers had on the ownership of the property.  As explained below, while it is apparent that on the date of the bankruptcy Young owned some sort of interest in the real estate, the Court makes no final findings as to the precise nature of that interest.

On June 13, 1997, TKO initiated the present adversary proceeding.[1]

## IV.  Discussion.

### A.  *Breach of Contract.*

■ TKO asserts that Graeber and Debtor breached the purchase agreement by failing to convey title to the property.  Trustee asserts that the agreement was contingent

---

**1.** Jean Komai–Green, another former spouse and a judgment creditor of Graeber, sought and was granted leave to intervene as a Plaintiff in this action, and supports TKO's position.  Graeber's sons have also intervened as plaintiffs, although they have not actively opposed the Trustee's efforts to liquidate this property through Young's bankruptcy estate provided their interests are protected.  The Defendant–Debtor Young, personally and in her capacity as Personal Representative of the Probate Estate of William Graeber, joins in support of the Trustee's position.

upon the ability of the parties to negotiate and document a lease-back agreement. Since a lease was never executed, Trustee contends there is no breach of contract to remedy. TKO argues that the execution of the lease was ministerial in nature and was not a condition precedent to enforcement of the agreement. Accordingly, TKO claims that the agreement was final as to all material terms, Graeber breached the contract, and specific performance is a proper remedy.

The Court looks to the terms of the agreement, specifically the lease-back provision, to determine whether the contract was complete as to all material terms. The clause in the agreement concerning the lease provides:

> Seller shall have the right to rent back the first and second floors on a triple net lease in an amount equal to 1/12th taxes, 1/12th insurance, principal and interest on $225,000 first. Seller agrees that interest-only payments on $190,000 is accruable but not payable until 30 days after sellers vacate property. This lease-back provision to be for 7 years with a 3 year renewal option.

Affidavit of Jed W. Manwaring, Exhibit B: Commercial/ Investment Real Estate Purchase and Sale Agreement, Addendum A. The purchase agreement also provided that the "[l]ease between Seller [and] Buyer [was] to be executed within 5 working days from acceptance." Id., Addendum B, Item # 6.

TKO asserts that the sale of property was not contingent upon the execution of the lease. TKO has submitted affidavits of Michael Keller, who negotiated the agreement on behalf of TKO, and Jon Adamson, who negotiated on behalf of Graeber and Young. Mr. Keller states that "TKO did not agree or contemplate that either party could back out of the Purchase Agreement by simply failing or refusing to execute a tendered lease consistent with the Purchase Agreement within or without the five working days." Affidavit of Michael T. Keller, ¶ 7. Further, it is asserted that it was the seller, Mr. Graeber, and his attorney Mr. Brown, who caused negotiations to occur after the five day period. Mr. Adamson states that at no time "did any one of them ever voice the idea that the seller was not liable on the Purchase Agree-

ment because the lease had not been executed or for any other reason." Affidavit of Jon D. Adamson, ¶ 6.

Trustee on the other hand, submits an affidavit of Stephen Brown, attorney for Graeber, which asserts that the lease provision was a contingency to the sale contract. Affidavit of Stephen C. Brown, ¶¶ 6, 7, 11, 12.

The Court concludes that the pleadings and accompanying affidavits raise genuine issues of material fact as to whether there was a valid contract between TKO and Graeber which was complete, and enforceable, as to all material terms. The Idaho courts have held that specific performance is not an appropriate remedy for breach of an earnest money agreement when the agreement is incomplete and not the final statement of the terms of conveyance. *W.O. Kepler v. WHW Management, Inc.*, 121 Idaho 466, 479, 825 P.2d 1122, 1135 (App.1992). Whether the lease-back was a contingency in the sale agreement here is an issue that can only be appropriately resolved at a trial. For this reason, Trustee is not entitled to summary judgment on this issue.

### B. *Rights of TKO in Bankruptcy.*

Construing the facts most favorably to TKO and assuming TKO is shown to have enforceable contract rights, what is its status in Young's bankruptcy proceeding?

### 1. Is the Contract Executory?

On its face, Young was a party to the written contract. She also claims an interest in the real property as Graeber's spouse, under the transfers she orchestrated under the power of attorney, or as a devisee under Graeber's will. Her interest under the contract and in the property, then, constitutes property of the bankruptcy estate. 11 U.S.C. § 541(a)(1), (2), (5)(A). Since Young's interest in the property is part of her bankruptcy estate, it is critical to determine whether the TKO purchase agreement is an "executory contract" for purposes of assumption or rejection under Section 365 of the Bankruptcy Code. Trustee asserts that it is, and further contends that the contract has been rejected pursuant to Section 365(d)(1).

If the Trustee is correct and the TKO contract is a rejected executory contract, what are TKO's rights in this bankruptcy case?

■ There is no precise definition of an executory contract in the Bankruptcy Code. Within the Ninth Circuit, the "Countryman" definition is most frequently used in determining whether a contract is executory for bankruptcy purposes. *In re Heward Brothers,* 97.2 I.B.C.R. 49. Under the Countryman definition, a contract is executory if:

the obligations of both parties are so far unperformed that the failure of either party to complete performance would constitute a material breach and thus excuse the performance of the other.

*Id.* (citing *In re Robert L. Helms Constr. & Dev. Co. Inc.,* 110 F.3d 1470, 1472 n. 2 (9th Cir.1997)).

Under this definition, clearly the purchase agreement was executory in nature. The agreement remained substantially unperformed; TKO had yet to pay the purchase price, and Graeber and Young had yet to transfer title or give up possession of the property to TKO. Even assuming such was not a condition to the enforceability of the contract, the parties were obliged to settle on the final terms of the lease-back arrangement. The deal had simply not closed.

■ In the event of a breach, the agreement gave TKO the option to either treat the "obligations under the contract as discharged and claim damages for the breach or to waive the breach and treat the contract as still in effect." *In re Alexander,* 670 F.2d 885, 887 n. 1 (9th Cir.1982) (quoting Countryman, Executory Contracts in Bankruptcy: Part II, 58 Minn.L.Rev. 479, 506–07 (1974)). By seeking specific performance of the contract, TKO essentially waived the breach and treated the contract as though it was still in effect.

■ The situation is similar to *Alexander,* where the plaintiff-buyer had entered into a contract to buy a home from the defendant-seller. On the date set for closing, the buyer deposited all necessary funds to close, thus tendering full performance. However, the seller refused to convey title to the property or surrender possession. The buyer then initiated a suit for specific performance in state court. On the day the trial was to commence, the seller filed a Chapter 13 petition, using the automatic stay to halt the buyer's action for specific performance. The *Alexander* court held that the sales agreement remained executory despite the tender of performance. Thus, "[p]erformance or the rendering of performance, not just tender of performance, is required." *Id.* at 887.

The TKO agreement is clearly an executory contract within the meaning of Section 365 of the Bankruptcy Code, and is therefore subject to being rejected or assumed by Trustee.

■ Section 365(d) (1) provides:

In a case under chapter 7 of this title, if the trustee does not assume or reject an executory contract or unexpired lease of residential real property or of personal property of the debtor within 60 days after the order for relief, or within such additional time as the court, for cause, within such 60-day period, fixes, then such contract or lease is deemed rejected.

The Code is clear that an executory contract must be assumed within 60 days of the order for relief. *N.L.R.B. v. Bildisco,* 465 U.S. 513, 529, 104 S.Ct. 1188, 1198, 79 L.Ed.2d 482 (1984). In a converted case, the date of the conversion order is considered the date of the order for relief. 11 U.S.C. § 348(a) and (c).

Here, Young's Chapter 13 case was converted to Chapter 7 on June 20, 1997. The deadline for assumption of the contract would have been August 19, 1997. Trustee did not assume the contract within the 60 day period, and the contract is deemed rejected by operation of Section 365(d)(1). As a result, under Section 502(g), TKO may assert a claim for its damages resulting from the rejection of the contract.

■ In some situations, the Bankruptcy Code provides special treatment to a non-debtor purchaser under an executory land sale contract. Under Section 365(i), if the executory contract is rejected, a purchaser in possession of the property may either treat the contract as terminated, or may remain in possession and continue to make payments

under the contract. Under such circumstances, the Bankruptcy Code grants the purchaser a means of compelling a trustee to deliver title to the property. However, this provision of the Code requires the purchaser to be in possession of the property on the date of bankruptcy. TKO was not. Therefore, TKO can not take advantage of the special protections provided in by Section 365(i).

Section 365(j) is applicable here and provides that:

> A purchaser that treats an executory contract as terminated under subsection (i) of this section, or a party whose executory contract to purchase real property from the debtor is rejected and under which such party is not in possession, has a lien on the interest of the debtor in such property for the recovery of any portion of the purchase price that such purchaser or party has paid.

Under this provision and the facts of this case, TKO is granted protection in the form of a lien on the property for the amount of the purchase price paid under the contract. 11 U.S.C. 365(j).[2]

From a review of Section 365, it is evident that Congress was cognizant of the problems created by the rejection of an executory contract for the sale of real property in the seller's bankruptcy case. Where the purchaser has taken possession of the property prior to bankruptcy, the purchaser can elect to perform the contract and compel the trustee to transfer title to the land. However, this status was not extended to purchasers not in possession. Instead, those purchasers are limited to a lien on the property for that part of the purchase price paid, and a claim in the bankruptcy case for any rejection damages. The Court concludes that the only remedies available to TKO under Section 365, then, are the lien arising under Section 365(j) and any claim it can prove for breach damages pursuant to Section 502(g).

**2. Specific Performance.**

■ TKO instead asserts it is entitled to specific performance of the contract against the Defendants, including the Trustee and Young's bankruptcy estate. Specific performance is an equitable remedy generally made available to purchasers of real property based upon the perceived unique or distinctive nature of land. *Perron v. Hale,* 108 Idaho 578, 582, 701 P.2d 198, 202 (1985). TKO has asserted a right to such remedy here based upon the failure of Graeber and Young to convey title to the property. Again, for the purposes of this analysis, it will be assumed there was a valid contract to purchase the property, and that such agreement was breached by Graeber or Young. How is TKO's claim for specific performance to be treated in bankruptcy?

■ In this case, the property in question is likely a valuable investment. The property is arguably unique in its location and potential for commercial development in the downtown Boise area. In light of this, TKO could perhaps obtain specific performance in a state law action against Graeber and Young. This conclusion does not resolve how TKO's rights should be treated in bankruptcy, though. That question turns on whether TKO holds a "claim" in Young's bankruptcy case. Under Section 101(5)(B) of the Bankruptcy Code, the answer depends on whether, under state law, TKO has a right to damages in addition to its equitable remedy.

Under the Bankruptcy Code, a claim is defined in part as a "right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured." 11 U.S.C. § 101(5)(B); *see also In re Oseen,* 91 I.B.C.R. 241, 243 ("While the intended scope of the term 'claim' under the Bankruptcy Code is broad, whether [the] legal right to equitable relief ... under the contract is a claim for bankruptcy purposes turns on

---

**2.** The record is unclear as to what amounts, if any, were paid by TKO as either earnest money or a down payment on the aborted sale.

whether [the] breach ... gives rise to a right of payment.").

■ If the only remedy allowed by law is non-monetary, then the equitable remedy is not considered a claim for purposes of bankruptcy and it survives the discharge of the debtor. *In re Aslan,* 65 B.R. 826, 831 (Bankr.C.D.Cal.1986), *aff'd* 909 F.2d 367 (9th Cir.1990). The Court must decide whether, under state law, the non-breaching party has a right to obtain a money judgment, even though that party may also have a right to obtain an equitable judgment. *Id.* If so, the remedy is treated as a contingent claim under Section 101(5)(B), which claim can be discharged in bankruptcy. In adopting this provision of the Code, Congress

> "intended to cause the liquidation or estimation of contingent rights of payment for which there may be an alternate equitable remedy with the result that the equitable remedy will be susceptible to being discharged in bankruptcy."

124 Cong.Rec.H. 11089 (Sept. 28, 1978). *See also, In re A.J. Lane & Co., Inc.,* 107 B.R. 435, 438–439 (Bankr.D.Mass.1989) (purchaser's right to specific performance is subordinate to trustee's right to reject contract.)

■ In Idaho, in the case of a transfer of real property, the legal remedy of damages is presumed inadequate due to the uniqueness of land. *Perron v. Hale,* 108 Idaho 578, 582, 701 P.2d 198, 202 (1985). Accordingly, specific performance is allowed as an alternative to the inadequate legal remedy. However, specific performance is not the only remedy available, as the law does allow the non-breaching party to seek or be awarded money damages.

■ "[I]n general, when a contract has been breached, the aggrieved party may seek compensation for infringement upon any of three separate interests embodied in the contract." *Brown v. Yacht Club of Coeur d'Alene, Ltd.,* 111 Idaho 195, 198, 722 P.2d 1062, 1065 (App.1986). The three separate interests are the expectation interest, the restitution interest, and the reliance interest. The expectation interest, sometimes called the benefit of the bargain, places the aggrieved party in as good a position as if the contract had been performed. *Id.* "Where the vendor breaches his contract to convey land to the purchaser, the purchaser's normal damages remedy gives him his loss of bargain." *Id.* at 199, 722 P.2d at 1066. However, equitable relief, such as specific performance, could also fulfill the expectation interest. The restitution interest restores to the aggrieved party the value of any benefits bestowed upon the other party that would be unjust for that party to retain. *Id.* Finally, the reliance interest, allows the aggrieved party to recover any out-of-pocket expenses incurred in anticipation of performing the contract. *Id.* at 200, 722 P.2d at 1067.

*Brown* illustrates the options, in terms of remedies, available in Idaho to a party following the breach of a land sale contract. Clearly, specific performance is not the only remedy available. As such, under Idaho law, there is an alternative right to payment available to the parties as a consequence of the breach of a land sale contract.

Given the facts of this particular case, the Court concludes that TKO would have an alternative right to payment of its damages for the breach of its contract rights. This conclusion is evidently not disputed by TKO since in its first amended complaint, it prays for damages as an alternative claim. Thus, pursuant to Section 101(5)(B), TKO has a claim for purposes of bankruptcy, and its remedies in the bankruptcy case are therefore limited.

In a Chapter 7 bankruptcy case, claims are entitled to distribution from the proceeds of the property of the bankruptcy estate liquidated by the Trustee. 11 U.S.C. § 726. TKO may have a lien on the property under Section 365(j), but under proper circumstances, the property could be sold by the Trustee free and clear of that lien. 11 U.S.C. § 363(f). The Trustee may also sell property in which others own an interest. 11 U.S.C. § 363(h).

Parties in interest may object to the allowance of TKO's claim. 11 U.S.C. § 502(a). A right to payment arising from a right to an equitable remedy for breach of performance must be estimated for purpose of allowance in the bankruptcy case. 11 U.S.C. § 502(c)(2). In other words, even assuming TKO has a valid claim for specific perfor-

mance of the purchase agreement, under the Bankruptcy Code, its rights are restricted to filing a proof of claim and to distribution from the bankruptcy estate proceeds, the same as any other creditor of Young. The Trustee may sell the property and TKO has no right to specific performance of its contract as against the bankruptcy estate and the Trustee.

3. Fraudulent Conveyance.

■ TKO also asserts that the transfer of the property made by Young to herself under the power of attorney was fraudulent pursuant to Idaho Code §§ 55–906, 55–913, and 55–914. Under Idaho Code § 55–906, a transfer of property may be avoided by a creditor if made by the debtor with the intent to delay or defraud any person or creditor. Assuming TKO can prove the necessary elements to establish a fraudulent transfer, what is the status of this remedy in Young's bankruptcy?

Again, under Idaho law, once a transfer is found to be avoidable, in addition to cancellation of the transfer, "the creditor may recover judgment for the value of the asset transferred...." Idaho Code § 55–917(2). Put another way, in the face of a fraudulent conveyance, a creditor can either recover the actual property transferred, or a money judgment against the transferee for the property's equivalent value. Idaho Code §§ 55–916, 55–917. This is clearly an alternative right to payment beyond the equitable remedy of avoidance of the transfer and recovery of the asset. As such, TKO is considered to have a claim for purposes of Section 101(5)(B), and can not void the transfer as against the bankruptcy estate and the Trustee.

C. *Use of The Court's Section 105(a) Powers.*

■ As is frequently the case when a party dislikes the treatment provided its claim under the Bankruptcy Code, TKO asks the Court to invoke its broad equitable powers to order specific performance as the just and fair result under the facts of this case. Under 11 U.S.C. § 105(a), "[t]he court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." The Court declines to consider use of these equitable powers here.

■ In addition to the remaining serious issues of fact concerning whether TKO has enforceable contract rights, as discussed above, the Code sets forth TKO's remedies. "While endowing the court with general equitable powers, Section 105 does not authorize relief inconsistent with the provisions of the Bankruptcy Code." *In re One Hundred Bldg. Corp.*, 97.2 I.B.C.R. 56, 58 (*citing In re American Hardwoods, Inc.*, 885 F.2d 621, 625 (9th Cir.1989) and *In re Gurney*, 192 B.R. 529, 537 (9th Cir. BAP 1996)). Acting in its policy-making capacity, Congress has dictated what it perceives as the "fair" result under these facts. While TKO advances what it considers compelling arguments to the contrary, it is not appropriate for this Court to circumvent Congressional intent under the guise of "equity".

V. Conclusion.

Based upon the undisputed facts present in the record, and construing other facts most favorably to TKO, the Court concludes that TKO can not, as a matter of law, prevail in this action. Simply stated, even assuming TKO can show at trial that an enforceable contract existed between the parties, and that the contract was breached, TKO is not entitled to specific performance or to avoid the transfer of the real property as against Young's bankruptcy Trustee and bankruptcy estate. Rather, Young's bankruptcy estate acquires whatever interest she may have in the real property, and TKO may assert a creditor's claim in the bankruptcy case for purposes of sharing in any distributions in this case.

For the reasons set forth above, a separate order will be entered granting Trustee's motion for judgment on the pleadings, which the Court has treated as a motion for summary judgment, as to TKO's claims for specific performance and fraudulent transfer under Idaho law. Trustee's motion will also be granted with respect to the characterization of the purchase agreement as a rejected executory contract pursuant to Section 365. Trustee's motion will be denied as to the issue of whether the contract was complete and whether or not the lease-back agreement was a contingency in the sale agreement.

TKO's motion for partial summary judgment should be denied as to whether consideration was given for the transfer of property and as to whether Young had a marital interest in the property.

Moreover, TKO's alternative claim for an award of damages against Young and the Trustee is inappropriate. It may assert a right to participate in any distributions to creditors in this case by simply filing a proof of claim in the bankruptcy case, to which other interested parties may object, if they so choose. It is unnecessary to litigate any issues with respect to the amount of TKO's claim in the context of an adversary proceeding.

Since TKO may not, as a matter of law, have the relief prayed for in its amended complaint, entry of this order should dispose of the issues raised in this adversary proceeding, and it should be dismissed. Counsel for Trustee shall submit the appropriate form of order.