# IN THE SUPREME COURT OF THE STATE OF IDAHO
## Docket No. 36068

FRANK J. FAZZIO, JR., and CINDY ANN )
FAZZIO, husband and wife, and IDAHO )
LIVESTOCK COMPANY, LLC, )
)                    **Boise, February 2011 Term**
Plaintiffs-Respondents, )
)                    **2011 Opinion No. 41**
v. )
)                    **Filed:  March 21, 2011**
)
EDWARD J. MASON, an individual, )                    **Stephen W. Kenyon, Clerk**
)
Defendant-Appellant. )
_____ .

Appeal from the District Court of the Fourth Judicial District, State of Idaho, Ada County.  Hon. Kathryn A. Sticklen and Hon. Richard D. Greenwood, District Judge.

Judgment of the district court ordering specific performance, <u>affirmed</u>.  Costs to Respondents.

Hawley, Troxell, Ennis & Hawley, Boise, for appellant.  D. John Ashby and Merlyn W. Clark argued.

Derek A. Pica, PLLC, Boise, for respondents.  Derek A. Pica argued.

_____
.

BURDICK, Justice

Appellant Edward J. Mason (Mason) breached two agreements to purchase farmland (the "Properties") from Respondents.  Mason admits that he breached the agreements but appeals the district court's decision to award specific performance to Respondents.  Mason argues that specific performance is not an appropriate remedy in this case because he cannot comply with the award, contract damages provide an adequate remedy at law and specific performance results in a windfall for Respondents.  We affirm.

## I.  FACTUAL AND PROCEDURAL BACKGROUND

On April 12, 2006, Mason entered into an agreement to purchase a parcel of real property from Respondents Frank J. Fazzio, Jr. and Cindy Ann Fazzio (Mr. and Mrs. Fazzio) for the

1

purchase price of $1,530,000. On the same day, Mason entered into an agreement to purchase two parcels of real property from Respondent Idaho Livestock Company, LLC (Idaho Livestock) for the purchase price of $2,000,000. Mr. Fazzio, as manager, acted on behalf of Idaho Livestock in entering into the agreement with Mason. Pursuant to both purchase agreements, the closing date was February 26, 2007.

While the agreements were pending, Mason had the Properties annexed to the City of Kuna (Kuna). Mason also caused the Properties to be joined into the Kuna sewer local improvement district (LID), causing an encumbrance in the approximate amount of $425,000. Mason failed to close on the Properties on February 26, 2007. Mr. and Mrs. Fazzio and Idaho Livestock (collectively hereinafter the "Fazzios") filed for arbitration with the American Arbitration Association seeking specific performance. On September 12, 2007, in order to avoid arbitration, Mason and the Fazzios entered into settlement agreements whereby Mason would still purchase the Properties but at a later date. Pursuant to the settlement agreements, if Kuna approved Mason's preliminary plat, Mason was required to close on the Properties by December 21, 2007. Neither the original contracts nor the settlement agreements were contingent upon Mason obtaining financing. Both settlement agreements provide:

> **Specific Performance.** Should either party breach or violate this Settlement Agreement, the non-offending party shall have a remedy of specific performance and may apply to the district court of the county of Ada, state of Idaho to have this Settlement Agreement enforced by a judgment for specific performance.

Kuna approved Mason's preliminary plat prior to December 21, 2007; however, Mason again failed to close on the Properties.

On January 22, 2008, the Fazzios filed an Application for Entry of Arbitration Award, Or In the Alternative, Complaint for Breach of Contract. The Fazzios moved for summary judgment, asking the district court to either confirm their settlement as an arbitration award or to grant them summary judgment for breach of contract. The Fazzios requested specific performance. On December 30, 2008, the district court granted the motion for summary judgment. The district court declined to confirm the settlement agreement as an arbitration award, but it ordered specific performance under the breach of contract claim, finding that there was good reason to enforce the contract by specific performance rather than by the legal remedy of contract damages. In support of its order for specific performance, the district court noted that the Properties are unique, that the Properties were significantly and materially altered when

2

Mason caused them to be annexed to Kuna, that the contract was for a cash sale, and that performance is not so unlikely or impossible as to render the order futile.

On January 20, 2009, Mason filed the Notice of Appeal. On March 23, 2009, this Court dismissed the appeal as premature, because a final judgment had not yet been issued. On April 3, 2009, the Fazzios filed a Motion for Entry of Judgment. On April 7, 2009, Mason submitted a Motion for Reconsideration. On May 28, 2009, the district court denied the Motion for Reconsideration.

On May 28, 2009, the district court entered a Judgment, and a Corrected Judgment on October 5, 2009, in favor of the Fazzios on the ground that Mason failed to pay the balance due under the settlement agreements consistent with the December 30, 2008 court order granting summary judgment. Judgment was entered against Mason in favor of the Mr. and Mrs. Fazzio in the principal amount of $1,530,000, plus $412,471.08 interest, and in favor of Idaho Livestock in the principal amount of $2,000,000, plus $539,177.66 interest. The Fazzios were also granted vendor's liens to the Properties, which are to be enforceable through foreclosure sale pursuant to Chapter 1, Title 6, Idaho Code. Upon satisfaction of the judgment, and so long as the property has not been sold in satisfaction of the vendor's lien, Mason is entitled to transfer of title of the Properties subject to the requirement that he reimburse the Fazzios for any sums actually paid for charges and assessments of the Kuna LID previously paid by the Fazzios.

On September 17, 2009, the district court entered the Supplemental Judgment for Attorney's Fees and Costs, awarding the Fazzios attorney fees and costs pursuant to I.C. § 12-120(3) in the amount of $36,999.50. The district court disallowed $12,015 in attorney fees claimed by the Fazzios on the ground that these fees were to be addressed by this Court because they were incurred while defending against Mason's premature appeal to this Court.

On October 13, 2009, Mason filed the Amended Notice of Appeal.

## II. STANDARD OF REVIEW

This Court set forth the standard of review for an appeal from an order of summary judgment in *Infanger v. City of Salmon* as follows:

> In an appeal from an order of summary judgment, the Court's standard of review is the same as the standard used by the trial court in ruling on a motion for summary judgment. All disputed facts are to be construed liberally in favor of the non-moving party, and all reasonable inferences that can be drawn from the record are to be drawn in favor of the non-moving party. Summary judgment is appropriate if the pleadings, depositions, and admissions on file, together with the

affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. If there is no genuine issue of material fact, only a question of law remains, over which this Court exercises free review.

137 Idaho 45, 46–47, 44 P.3d 1100, 1101–02 (2002) (internal citations omitted).

In *P.O. Ventures, Inc. v. Loucks Family Irrevocable Trust*, this Court stated:

Specific performance is an extraordinary remedy that can provide relief when legal remedies are inadequate. The inadequacy of remedies at law is presumed in an action for breach of a real estate purchase and sale agreement due to the perceived uniqueness of land. The decision to grant specific performance is a matter within the district court's discretion. When making its decision the court must balance the equities between the parties to determine whether specific performance is appropriate.

144 Idaho 233, 237, 159 P.3d 870, 874 (2007) (internal citations omitted). "A trial court does not abuse its discretion if it (1) recognizes the issue as one of discretion, (2) acts within the boundaries of its discretion and applies the applicable legal standards, and (3) reaches the decision through an exercise of reason." *Johannsen v. Utterbeck*, 146 Idaho 423, 429, 196 P.3d 341, 347 (2008).

## III. ANALYSIS

### A. The district court did not abuse its discretion in awarding specific performance.

Mason sets forth three grounds upon which he argues that the district abused its discretion in awarding specific performance. First, Mason argues the district court applied the wrong legal principle by failing to recognize or apply the equitable rule that a court should not order an equitable remedy which is not feasible. Second, he argues that damages are an adequate remedy, making specific performance inappropriate. Third, he argues that specific performance results in a windfall for the Fazzios. The Fazzios argue that the district court acted within its discretion in awarding specific performance and that the settlement agreements explicitly provide for specific performance. Mason's arguments are addressed in turn.

#### 1. Impossibility of performance.

According to Mason, it is a "well-established rule that a court should not order an equitable remedy, including specific performance, which is not feasible." Mason asserts that it is undisputed that he does not have the approximately $3.5 million needed to close on the Properties, and therefore, the award of specific performance is futile. Mason argues that when the district court was presented with this argument, it mistakenly analyzed a different legal

4

doctrine—the defense of impossibility of performance—despite Mason's efforts to explain the difference between the two doctrines.

Mason is correct that the defense of impossibility of performance is distinct from the various equitable doctrines which concern whether an award of specific performance is appropriate. The defense of impossibility is a complete defense that excuses the defendant from performing. *See Twin Harbors Lumber Co. v. Carrico*, 92 Idaho 343, 348, 442 P.2d 753, 758 (1968). Whereas equitable doctrines that preclude, or warn against granting, equitable relief provide no defense for breaching a contract and leave the plaintiff with a remedy at law, such as damages. *See*, *e.g.*, *Suchan v. Rutherford*, 90 Idaho 288, 303, 410 P.2d 434, 443 (1966) (reversing district court's order of specific performance and remanding to calculate damages).

Mason, however, misconstrued the equitable doctrine upon which he relies. Mason's argument concerns whether specific performance is appropriate where it is difficult or impossible for the defendant to comply. However, Mason first cites the following quote from *Anderson v. Whipple*: "Equity will not enter a decree for specific performance *the enforcement of which* is not practicable or feasible." 71 Idaho 112, 125, 227 P.2d 351, 359 (1951) (emphasis added) (*overruled on other grounds by David Steed & Assocs. v. Young*, 115 Idaho 247, 766 P.2d 717 (1988)). The equitable doctrine cited in *Anderson* concerns the court's ability to practically and feasibly enforce a remedy of specific performance in the given case, not the defendant's ability to perform.[1] Mason has not made an argument concerning the court's ability to enforce the order of specific performance in this case. Even if Mason had made an argument concerning the feasibility of the court's enforcement, these contracts were for cash sales, and this Court has determined that cash sales for land are easily enforceable. *Perron v. Hale*, 108 Idaho 578, 583,

---

[1] At issue in *Anderson* was whether this Court would specifically enforce an oral agreement whereby the defendants were to occupy their Mother's farm property as tenants for life at a reasonable rental rate with title in fee upon Mother's death. 71 Idaho at 117–20, 227 P.2d at 353–55. This Court noted: "An agreement, which leaves any of the material terms or conditions for future determination, cannot be enforced." *Id.* at 125, 227 P.2d at 359. In declining to award specific performance, this Court's analysis focused on the Court's ability to enforce the remedy, not the defendant's ability to perform:

> Equity will not enter a decree for specific performance the enforcement of which is not practicable or feasible. These parties have had many disagreements as to what the rent should be and since 1946 have been entirely unable to reach any agreement at all. Under such circumstances, to enforce the decree entered, the court must, necessarily, either retain jurisdiction for the purpose of determining the reasonable rental each year during the life of the plaintiff, or the parties would be required to have the rental determined by jury each year, so long as they remain unable to agree. Such a result is abhorrent to equity. 49 Am. Jur., *Specific Performance*, secs. 70 and 72.

*Id.*

5

701 P.2d 198, 203 (1985) (awarding specific performance of land sale and noting "[t]he agreement was for a cash sale which can be easily enforced").

More on point, Mason cites *Paloukos v. Intermountain Chevrolet Co.*, 99 Idaho 740, 588 P.2d 939 (1978). In *Paloukos*, the defendant car dealership, Intermountain, was unable to obtain the particular truck it promised to order and sell to the plaintiff, Paloukos, because of a product shortage. *Id.* at 743, 588 P.2d 942. This Court declined to grant specific performance primarily on the ground that damages provided an adequate remedy at law. *Id.* at 745, 588 P.2d at 944. However, after finding the availability of an adequate remedy at law, this Court added:

> Moreover, the sole remaining defendant in this case, Intermountain, is a dealer, not a manufacturer, of automobiles. Paloukos does not allege that Intermountain is in possession of a conforming pickup which it could sell him. Indeed, the record suggests quite the contrary. *It is well established that the courts will not order the impossible*, such as ordering the seller under a sales contract to sell to the buyer that which the seller does not have. *See Moody v. Crane*, 34 Idaho 103, 199 P. 652 (1921); 5A A. Corbin, Contracts § 1170 (1964); 2 Restatement of Contracts § 368, illus. 1 (1932).

*Id.* at 745–46, 588 P.2d at 944–45 (emphasis added). While *Paloukos* is not directly on point since it involves a sale of goods and was decided primarily on the ground that there was an adequate remedy at law, the case sets forth the general equitable doctrine that a court should not order specific performance where it is *impossible*—not merely impractical—for the defendant to comply.

The district court recognized that Mason did not assert the defense of impossibility of performance and recognized that Mason was arguing specific performance would be inappropriate given his alleged inability to perform. The district court stated in its decision:

> Mason does not argue an excuse for breaching the settlement agreement, most notably declining to plead impossibility as a defense. Rather, the parties focus on whether the Fazzios are entitled to an award of specific performance. In Mason's memorandum in opposition, as well as in his accompanying affidavit, he explains in detail the specific efforts he has undertaken to obtain financing. He also provides some explanation as to why it would not be prudent for him to liquidate his assets to comply with the contractual terms, as the Fazzios have suggested.

Mason argues, however, that when the district court attempted to apply the equitable doctrine of impossibility, it mistakenly assessed the facts of this case under the defense of impossibility instead of under the equitable doctrine. Specifically, Mason argues that the district court dismissed his impossibility claim upon finding that the impossibility was subjective to him, but

6

Mason argues that, unlike the defense of impossibility, the equitable doctrine of impossibility is not limited to instances of objective impossibility.

The Restatement (First) of Contracts § 368 (1932) provides, "specific enforcement will not be decreed if the performance sought is impossible", and explains in Comment A that this equitable doctrine of impossibility applies in instances of both subjective and objective impossibility. The district court, on the other hand, relied on *Christy v. Pilkinton*, 273 S.W.2d 533 (Ark. 1954), where the Arkansas Supreme Court limited the equitable doctrine of impossibility of performance to instances of objective impossibility in a case with facts very similar to the facts of this case. In *Christy*, the seller of real estate sought specific performance, but the buyers put forth evidence showing that they did not have and could not borrow the unpaid balance of the purchase price. *Id.* The Arkansas Supreme Court nevertheless awarded specific performance and explained:

> Proof of this kind does not establish the type of impossibility that constitutes a defense. There is a familiar distinction between objective impossibility, which amounts to saying, "The thing cannot be done," and subjective impossibility—"I cannot do it." Rest., *Contracts*, § 455; Williston on Contracts, § 1932. The latter, which is well illustrated by a promisor's financial inability to pay, does not discharge the contractual duty and is therefore not a bar to a decree for specific performance.

*Id.*

We agree that a buyer's financial inability to pay is not a complete bar to specific performance in a case involving the breach of an agreement to purchase land. While the defendant's subjective ability to comply with the award of specific performance is a relevant equitable factor to be considered, the district court acted within its discretion in dismissing Mason's impossibility argument. The district court considered the difficulties Mason faced in obtaining financing but concluded "we cannot find that the present case presents a situation where performance is so unlikely and impossible that it would render the order futile." Mason's affidavits show that he has been unable to obtain financing, despite many attempts to do so, and that liquidating his assets to close on the deal may be imprudent, given the current real estate market and given that the majority of his assets are real property serving as collateral on bank loans for most of which Mason owes more than the appraised property value. While the imprudence of liquidating one's assets may be a relevant factor in determining whether specific performance is appropriate in a given case, imprudence is not impossibility. Even if Mason had

7

no assets that could be liquidated, his inability to obtain financing up to the time of the decision does not show impossibility, because he may still be able to obtain financing. Thus, it was within the district court's discretion, upon considering Mason's ability to perform, to award specific performance.

2. Adequate remedy at law.

Mason argues that contract damages (measured by the difference between the contract prices and the market values of the Properties on the day Mason breached, plus any consequential damages) provide a plain, speedy, adequate and complete remedy. According to Mason, the values of the Properties on the day of breach are readily ascertainable, there is no evidence the properties are unique or have deteriorated, and any damages resulting from the annexation of the Properties and their being joined to the Kuna LID can be measured and included in an award of damages.

As this Court explained in *Perron*:

> The general rules of the common law are that: (1) a party is entitled to the equitable remedy of specific performance when damages, the legal remedy, are inadequate; (2) because of the perceived uniqueness of land, it is presumed that damages are inadequate in an action for breach of a land sale contract, and the non-breaching party need not make a separate showing of the inadequacy of damages; (3) the remedy is equally available to both vendors and purchasers; and (4) additionally, the appropriateness of specific performance as relief in a particular case lies within the discretion of the trial court. *E.g.* Cribbet, Principles of the Law of Property, p. 144 (2d ed. 1975); 71 Am.Jur.2d Specific Performance, § 112 (1973); *Scogings v. Andreason*, 91 Idaho 176, 180, 418 P.2d 273, 277 (1966). Notwithstanding these general rules, this Court has denied specific performance of a land sale contract when the "reasons assigned by the authorities for the rule applied in land contract cases are not convincing when applied to the facts of the case . . . ." [*Suchan*, 90 Idaho at 295, 410 P.2d at 438] (vendor of farm denied specific performance).

108 Idaho at 582, 701 P.2d at 202.

In awarding specific performance, the district court explained: "Not only is the real property itself inherently unique, the real property was significantly and materially altered by Mason in anticipation of the sale by causing it to be annexed into the City of Kuna." We agree. Mason significantly altered the Properties—which the Fazzios used as farmland—by causing them to be annexed in anticipation of developing them, as they are now subject to Kuna's ordinances. In light of the presumption that damages are inadequate in an action for a breach of land sale contract and due to Mason's alteration of the Properties, it was within the district

court's discretion to award specific performance in this case. *See Perron*, 108 Idaho at 583, 701 P.2d at 203 (upholding award for specific performance in case involving breach of land sale contract, noting that alteration of property, amongst other factors, "militate[s] for the grant of specific performance").

### 3. Windfall.

Mason argues that specific performance will result in a windfall to the Fazzios. After Mason failed to pay the balance due on the settlement agreements pursuant to the district court's order granting summary judgment, the district court entered a judgment for the contract prices plus interest, and granted the Fazzios vendors' liens on the Properties. Mason claims that he cannot satisfy the judgment and that, therefore, the Properties will be sold at foreclosure sales where the Fazzios will be entitled to deficiency judgments pursuant to I.C. § 6-108 for the difference between the total judgment and the value of the Properties when sold. Mason asserts that while the real estate market had already declined from the contract date to the date of breach, the real estate market has plummeted since then. Thus, according to Mason, a deficiency judgment will be much larger than would be an award of damages, which is measured by the difference between the contract price and the value of the properties at the time of breach in December 2007 plus any consequential damages. According to Mason, this results in a windfall to the Fazzios.

"The remedy of specific performance may be invoked where necessary to complete justice between the parties. The object of specific performance is to best effectuate the purpose for which the contract is made, and specific performance should be granted upon such terms and conditions as justice requires." 81A C.J.S. *Specific Performance* § 2 (2011). In considering whether to award specific performance, a court must balance the equities between the parties. *Fullerton v. Griswold*, 142 Idaho 820, 823, 136 P.3d 291, 294 (2006). While it is presumed that remedies at law are inadequate in an action for breach of a real estate purchase and sale agreement due to the perceived uniqueness of land, specific performance is an equitable remedy and should not be granted when it would be unjust, oppressive or unconscionable. *Kessler v. Tortoise Dev., Inc.*, 134 Idaho 264, 270, 1 P.3d 292, 298 (2000).

While Mason may be correct that a deficiency judgment would be larger—perhaps much larger—than a damages award in this case, this does not mean that specific performance results in a windfall for the Fazzios. After Mason failed to comply with the award of specific

9

performance, the district court entered a judgment against Mason for the contract prices plus interest, which put the Fazzios precisely in the position they would have been in but for Mason's breach. The Fazzios are getting nothing more than they would have received had Mason fulfilled his obligations under the settlement agreements. Any difference between a deficiency judgment and an award of contract damages is attributable to the decline in the land's value. The fact that the transactions turned out to be bad deals for Mason is the result of changed conditions in the real estate market, which is a risk that Mason, an experienced real estate developer, took when he entered into the transactions.

Furthermore, the settlement agreements contemplated the availability of specific performance, stating: "Should either party breach . . . this Settlement Agreement, the non-offending party shall have a remedy of specific performance and may apply to the district court . . . to have this Settlement agreement enforced by a judgment for specific performance." A contract clause which gives a non-breaching party the right to elect the remedy of specific performance does not require a court to award specific performance. *See DiGiuseppe v. Lawler*, 269 S.W.3d 588, 597 (Tex. 2008) (despite specific performance provision in contract, specific performance would be awarded only if the general equitable requirements for specific performance were met); *see also Black v. American Vending Co.*, 238 S.E.2d 420, 421 (Ga. 1977) (reaching same conclusion as *DiGiuseppe*, stating: "Parties cannot by contract compel a court of equity to exercise its power in what is really an ordinary case at law."). Nevertheless, the fact that Mason agreed to the inclusion of this specific performance clause in the settlement agreements provides some additional support to finding that specific performance is equitable in this case, as the inclusion of the clause shows that specific performance was within contemplation of the parties and may have been part of reason the Fazzios entered into the settlement agreements and allowed Mason to extend the closing date.

We hold that it was within the district court's discretion to award specific performance, as specific performance is not unjust, oppressive or unconscionable in this case.

**B. Attorney Fees.**

The Fazzios request attorney fees pursuant to the settlement agreements, I.C. § 12-120(3) and I.A.R 41. Idaho Code § 12-120(3) provides:

> In any civil action to recover on an open account, account stated, note, bill, negotiable instrument, guaranty, or contract relating to the purchase or sale of goods, wares, merchandise, or services and in any commercial transaction unless

10

otherwise provided by law, the prevailing party shall be allowed a reasonable attorney's fee to be set by the court, to be taxed and collected as costs.

Because the Fazzios are the prevailing party in this civil action involving a commercial transaction, we award attorney fees to the Fazzios pursuant to I.C. § 12-120(3). As requested by the Fazzios, this award includes the fees they incurred defending against the original appeal which this Court conditionally dismissed, so long as no fees have been duplicated in the total attorney fees request.

## IV.  CONCLUSION

We affirm the district court's grant of specific performance. The district court recognized that it had the discretion to award damages or specific performance, and upon considering Mason's evidence suggesting it would be difficult for him to comply as well as considering the other equitable factors relevant to this case, the district court exercised reason in electing to award specific performance to the Fazzios. Attorney fees and costs to the Fazzios.

Chief Justice EISMANN and Justices J. JONES, W. JONES and HORTON, **CONCUR.**