## IN THE SUPREME COURT OF THE STATE OF IDAHO
### Docket No. 51858

PATRICK MCLAUGHLIN and MEGHAN MCLAUGHLIN, husband and wife,

    Plaintiffs-Appellants-
    Cross Respondents,

v.

SHARELYNN F. MOORE and JASON R. MOORE, wife and husband,

    Defendants-Respondents-
    Cross Appellants.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

Coeur d'Alene September 2025 Term

Opinion Filed: December 23, 2025

Melanie Gagnepain, Clerk

---

Appeal from the District Court of the First Judicial District, State of Idaho, Bonner County. Barbara Buchanan, Senior District Judge, and Susie Jensen, District Judge.

The order of the district court granting summary judgment on specific performance is <u>reversed</u>, and the case is <u>remanded</u>.

Evans Craven & Lackie, PS, Spokane, WA, for Appellants Patrick and Meghan McLaughlin. Christopher J. Kerley argued.

Ramsden, Marfice, Ealy & De Smet LLP, Coeur d'Alene, for Respondents Sharelynn F. and Jason R. Moore. Jack A. Mosby argued.

---

MEYER, Justice.

This appeal concerns the enforceability of a residential real estate purchase and sale agreement (REPSA). Sharelynn and Jason Moore offered to sell their condominium to Patrick and Meghan McLaughlin. After agreeing on a price and signing the REPSA, the Moores called the McLaughlins to inform them that they no longer intended to sell their condominium.

On appeal, the McLaughlins challenge the district court's decision that specific performance was not available because they did not tender the full purchase price at closing. On cross-appeal, the Moores argue that the purchase and sale agreement was unenforceable under the statute of frauds due to an inadequate property description. We affirm the district court's decision to dismiss the Moores' statute of frauds defense because, under Idaho Code section 55-1526, the REPSA sufficiently described the condominium. However, we reverse the district court's decision

1

to deny the McLaughlins' omnibus motion for summary judgment and grant the Moores' motion for partial summary judgment because the court erred as a matter of law in determining that specific performance was not available to the McLaughlins without full tender at closing. We remand the case with instruction for the district court to weigh the equities between the parties and determine whether the McLaughlins are entitled to specific performance.

## I. FACTUAL AND PROCEDURAL BACKGROUND

### A. Factual Background

The Moores have owned their three-bedroom, two-bathroom condominium since 2018, using it mainly as a vacation home. The condominium is located on Schweitzer Mountain, in Bonner County, Idaho, and its address is listed in the REPSA as "419 Crystal Springs Rd, #2" in Sandpoint, Idaho 83864 (the Condominium). The Condominium is part of a four-unit residential building. It features a gas fireplace, a one-car garage, and a community hot tub and game room. It is a ski-in, ski-out property, meaning the Condominium is situated above the Schweitzer Village Lodge with direct access to the ski slopes.

The Moores previously lived in Spokane, Washington, where they were neighbors with the McLaughlins before the Moores relocated to California in July 2021. In early August 2020, Mrs. Moore sent Mrs. McLaughlin a Facebook message indicating that the Moores had decided to sell the Condominium and asked if the McLaughlins were interested in buying it. After viewing the Condominium, the McLaughlins agreed to purchase it. Using an Idaho Association of Realtors, Inc. RE-21 Real Estate Purchase and Sale Agreement form, the parties set January 5, 2021, as the closing date after the Moores asked to push closing past the holidays so their children could spend one more Christmas at the Condominium. The parties agreed on a sale price of $525,000. The REPSA required the McLaughlins to tender $10,000 in earnest money, followed by approximately $115,000 in personal funds, and $400,000 in loan proceeds at the time of closing. The McLaughlins signed the REPSA on August 2, 2020, and the Moores signed and initialed each page on August 5, 2020.

The REPSA required the McLaughlins to obtain a preliminary commitment of title insurance and provided for inspection rights. The parties later signed an Addendum to the REPSA (the Addendum), which designated Pioneer Title Company as the closing agent. The Addendum also adjusted the inspection period to accommodate the January 5th closing, providing, "[t]he inspection period will be complete by December 1, 2020."

2

On August 12, 2020, Mr. McLaughlin mailed a $10,000 check to Pioneer Title as earnest money. The next day, Pioneer Title confirmed the title report had been ordered. In the following weeks, the McLaughlins enrolled their three children in ski programs and purchased season ski passes at Schweitzer Mountain, in addition to other personal arrangements, in anticipation of acquiring the Condominium.

On September 6, 2020, and again on September 10, Mr. McLaughlin and Mrs. Moore spoke by telephone. After those calls, the parties held different understandings concerning the sale of the Condominium. The Moores claimed that the sale was mutually canceled, while the McLaughlins maintained that the sale was still moving forward under the terms of the REPSA. After the September calls, the parties' conduct diverged. The Moores celebrated keeping their vacation condo. Mr. McLaughlin notified Pioneer Title that the Moores were attempting to back out of the sale. He also canceled the inspection scheduled for September 10, but six days later, through counsel, demanded that the Moores proceed with the sale. The Moores responded, through counsel, that the deal had been mutually rescinded, and that the REPSA was unenforceable because of an error in the legal description.

In late October, the McLaughlins' lender, Rivermark Community Credit Union, approved them for a 30-year, conventional loan to finance $393,750 for the Condominium at a fixed interest rate of 2.5 percent. On December 1, Mr. McLaughlin sent the Moores a second amendment to the REPSA, which waived inspection of the Condominium. The same day, the lender's appraisal occurred.

As the closing date neared, the McLaughlins wired $127,407.95 for the down payment to Pioneer Title. The Moores did not attend the closing on January 5, 2021, and began renting the Condominium as a short-term rental in early 2021.

## B.  Procedural History

The McLaughlins filed a complaint for breach of contract on January 13, 2021, seeking specific performance of the REPSA. The Moores responded, denying liability and asserting affirmative defenses, including oral rescission, abandonment, and unenforceability under the statute of frauds.

Early in the proceedings, the parties filed opposing motions for partial summary judgment. The Moores' motion argued that under the statute of frauds the REPSA contained an insufficient property description and was therefore invalid and unenforceable. The McLaughlins' motion

contended that the Moores' statute of frauds defense did not apply because the Condominium's description was sufficiently specific. As an alternative argument, the McLaughlins argued that the statute of frauds did not apply because the McLaughlins partially performed by obtaining financing and a preliminary title insurance commitment and scheduling an inspection of the property. The district court denied both motions for partial summary judgment after determining "that genuine disputes of material fact exist which preclude the entry of summary judgment on both the issue of specific performance and the issue of the adequacy of the property description."

The case proceeded to a one-day bench trial on the issue of the Moores' statute of frauds defense. Other issues were resolved later in the case. At the trial, the Moores argued that the property description, as written in the REPSA, did not describe the Condominium "exactly" and thus violated the statute of frauds. The McLaughlins responded that the essential terms of the REPSA, including the property description, were sufficiently certain. The district court agreed with the McLaughlins, concluding that the REPSA sufficiently described the Condominium. The court reasoned:

> [T]he [c]ourt's ruling would probably be different if I simply had the . . . street address. But I'm looking at [the McLaughlins'] Exhibit 1, [the Moores'] Exhibit A, the contract at issue, and in this case if I simply had 419 Crystal Springs Road, Sandpoint, Idaho, 83864 we'd be in a whole different situation because we wouldn't know the identity, the boundaries, anything like that. But I have--first of all, we have "Number 2". So we know that it's Unit 2. And we have "Twin Creeks Condos."
>
> So we know what it is. We know which unit it is. And we have the physical address.
>
> . . . .
>
> So I think when you have the condominium, and the . . . specific unit identified, coupled with the physical address, that that is a sufficient description that allows you to go beyond what they were talking about in [*Ray v. Frasure*, 146 Idaho 625, 200 P.3d 1174 (2009)], you have the identity and the quantity of the property.
>
> And really the boundaries, as well, when you are talking about one particular condo unit.

The Moores filed a motion for permissive appeal of the district court's order dismissing their statute of frauds defense with this Court, which was denied. In the interim, the case was reassigned following the retirement of the presiding district judge.

4

Following this Court's denial of the Moores' request for permissive appeal, the McLaughlins filed a second motion for partial summary judgment asking the district court to dismiss the Moores' other affirmative defenses, oral rescission and abandonment, and thereby narrow the issue presented at trial to their specific performance claim. After hearing oral argument, the district court denied the McLaughlins' motion because the parties' disagreement raised an issue of fact regarding whether there had been part performance of an oral rescission, which precluded summary judgment on the Moores' defenses. The district court explained, "the Moores contend that the fact that the McLaughlins canceled the inspection proves they acknowledged the rescission. The McLaughlins disagree with the Moores' characterization and assert they canceled the inspection only because the Moores would not provide access to the condo."

The Moores subsequently filed their second motion for partial summary judgment, seeking to dismiss the McLaughlins' specific performance remedy due to the Moores' failure to tender the full purchase price at closing. The McLaughlins responded with an omnibus motion for summary judgment, raising arguments that would resolve all issues before the district court without the need for a jury trial to decide the factual issues concerning oral rescission, cancellation, and abandonment.

After hearing both summary judgment motions, the district court granted the Moores' motion, resulting in the dismissal of the McLaughlins' remedy for specific performance. The court concluded that the remedy of specific performance was not available to the McLaughlins without full tender of the purchase price of the Condominium at closing. However, the court denied the McLaughlins' motion, concluding that genuine disputes of material fact remained for the jury to resolve the McLaughlins' breach of contract cause of action. Namely, because Mr. McLaughlin denied any oral rescission, and Ms. Moore testified that Mr. McLaughlin "understood" and accepted her oral rescission there was conflicting testimony regarding whether there was an oral rescission of the REPSA.

The case proceeded to jury trial on the remaining breach of contract issues, including whether the parties orally rescinded or abandoned the REPSA. The jury found that a contract existed between the parties, which had not been orally rescinded or abandoned, and the Moores breached that contract on September 5–10, 2020. Finally, the jury found that the Moores' breach damaged the McLaughlins. The district court entered judgment for $25,000 in the McLaughlins' favor. Following a contested motion for attorney fees and costs, the district court determined that

5

the McLaughlins were the prevailing party and awarded them $170,509.50 in attorney fees and $7,422.28 in costs.

The McLaughlins timely filed a notice of appeal. Shortly after, the Moores filed a notice of cross-appeal.

## II. ISSUES ON APPEAL

1. Whether the district court erred in determining that the description of the Condominium in the REPSA was sufficient to withstand a statute of frauds defense.

2. Whether the district court erred in determining that the remedy of specific performance was unavailable to the McLaughlins because they did not tender the full purchase price at closing.

3. Whether the district court erred in awarding the McLaughlins attorney fees as the prevailing party.

4. Whether either party is entitled to attorney fees on appeal.

## III. STANDARDS OF REVIEW

The standard of review on appeal from an order granting summary judgment is the same standard that the district court uses in ruling on the summary judgment motion. *Berglund v. Dix*, 170 Idaho 378, 384, 511 P.3d 260, 266 (2022). "The court must grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." I.R.C.P. 56(a).

Following a bench trial, this Court's review is limited to determining whether the evidence supports the findings of fact and whether those findings support the conclusions of law. *Wilson v. Mocabee*, 167 Idaho 59, 64, 467 P.3d 423, 428 (2020) (quoting *Mortensen v. Berian*, 163 Idaho 47, 50, 408 P.3d 45, 48 (2017)). This Court will not overturn findings of fact unless they are clearly erroneous. *Id.* (citation omitted). In view of this role, the district court's findings of fact will be interpreted liberally in favor of the judgment. *Id.* (quoting *Mortensen*, 163 Idaho at 50, 408 P.3d at 48).

Finally, "[t]his Court reviews a district court's award of attorney fees for an abuse of discretion." *Alsco, Inc. v. Fatty's Bar, LLC*, 166 Idaho 516, 533, 461 P.3d 798, 815 (2020). An abuse of discretion inquiry considers whether the district court: "(1) correctly perceived the issue as one of discretion; (2) acted within the outer boundaries of its discretion; (3) acted consistently with the legal standards applicable to the specific choices available to it; and (4) reached its decision by the exercise of reason." *Lunneborg v. My Fun Life*, 163 Idaho 856, 863, 421 P.3d 187, 194 (2018).

# IV. ANALYSIS

**A. The district court did not err in determining that the Condominium was sufficiently described in the REPSA to withstand the statute of frauds defense.**

On cross-appeal, the Moores argue that the address in the REPSA does not meet the requirements of the statute of frauds, and therefore, the contract is unenforceable. We address this issue first because the trial on the statute of frauds defense occurred before the district court's summary judgment decision on specific performance and the jury trial. Moreover, the Moores' statute of frauds defense is potentially dispositive of all the issues.

The McLaughlins respond that the statute of frauds does not apply because the Moores are using the defense strategically to escape their contractual obligations. Even if the defense applies, the McLaughlins argue that the description in the REPSA was sufficiently specific to identify the Condominium. As an alternative argument, the McLaughlins claim that the contract is enforceable under the doctrine of part performance, as outlined in Idaho Code section 9-504. Because we hold that the description in the REPSA was sufficient to comply with the statute of frauds for the reasons set forth below, we affirm the district court's decision to dismiss the Moores' statute of frauds defense.

The statute of frauds renders an agreement for the sale of real property invalid unless the agreement, note, or memorandum is in writing and signed by the party or an agent of that party. I.C. § 9-505(4). Specific performance of land sale contracts that do not comply with the statute of frauds will not be ordered. *Ray v. Frasure*, 146 Idaho 625, 628, 200 P.3d 1174, 1177 (2009) (citation omitted). "For a land sale contract to be specifically enforced, the contract must typically contain the minimum provisions of the parties involved, the subject matter thereof, the price or consideration, a description of the property, and all the essential terms of the agreement." *P.O. Ventures, Inc. v. Loucks Fam. Irrevocable Tr.*, 144 Idaho 233, 238, 159 P.3d 870, 875 (2007) (citations omitted).

In the instant case, the parties formalized the contract in a RE-21 REPSA form that specified the closing date and sale price. The REPSA contained blanks for the parties to fill in with information specific to the transaction. In completing the REPSA, the McLaughlins identified the Condominium by its "COMMONLY KNOWN AS" street address, "419 Crystal Springs Rd, #2" in Sandpoint, Idaho 83864, and "legally described as: Twin Creeks Condos." Both parties signed and dated the REPSA in addition to initialing the bottom of each page.

Idaho's Condominium Property Act (the Act) recognizes the condominium form of property ownership and outlines the creation, sale, and operation of condominiums. *See* I.C. §§ 55-1501 to 55-1528. Condominium ownership is a hybrid form of interest in real property, entitling an owner to (1) the exclusive ownership and possession of a unit and (2) an undivided interest as tenants in common with the other unit owners in the common areas. 15B Am. Jur. 2d *Condominiums, Etc.* § 1 (Nov. 2025 update); *see also* I.C. §§ 55-1503(a), 55-101B (defining condominium as "an estate consisting of (i) an undivided interest in common in real property, in an interest or interests in real property, or in any combination thereof, together with (ii) a separate interest in real property, in an interest or interests in real property, or in any combination thereof").

The Idaho Legislature recognized condominiums as valid estates in real property if the condominium project is created in compliance with the Act. I.C. § 55-1504 ("A condominium project is created if there has been substantial compliance in good faith with the provisions of this section.").

Relevant to the property description in this case, the Act provides:

> Every deed, *contract of sale*, lease, mortgage or other instrument may legally describe a condominium *by its identifying number*, symbol, name or other identification or designation as shown on the plat of record or as shown in the declaration, and *every such description shall be deemed good and sufficient for all purposes*.

I.C. § 55-1526 (emphasis added). Under this provision, it is sufficient to describe the specific condominium by its identifying number, as provided on the recorded plat or in the declaration. *Id.* When this method of identification is utilized, the Act confirms that it is "good and sufficient for all purposes." *Id.*

The Moores rely on *Ray* and its progeny to support their argument that a property description containing only a physical address without metes and bounds or referencing a recorded instrument does not identify the Condominium exactly and is insufficient to satisfy the statute of frauds. The Moores' reliance on *Ray*, which holds that "a property description consisting solely of a physical address does not satisfy the statute of frauds," is misplaced. *See* 146 Idaho at 630–31, 200 P.3d at 1179–80; *see also 616 Inc. v. Mae Props., LLC*, 171 Idaho 610, 620–21, 524 P.3d 889, 899–900 (2023) ("Although the property description required for a lease of real property is less demanding than that required for a sale, a physical address alone 'gives no indication of the quantity, identity, or boundaries of the real property' to be leased." (internal quotation marks and citation omitted)).

8

In *Ray*, the challenged contract "described the property as 2275 W. Hubbard Rd., City of Kuna, County of Ada, Idaho 83634." 146 Idaho at 626, 200 P.3d at 1175. Although the contract included a space designated for a legal description, the parties left the space blank. *Id.* In addition, neither party indicated that a legal description was attached as an addendum by checking a box in the contract, nor did they attach a legal description to the contract itself. *Id.* After the seller sold the subject property to a different buyer, the seller asserted a statute of frauds defense in a lawsuit filed by the initial buyers. *Id.* at 627, 200 P.3d at 1176.

This Court vacated the district court's order for specific performance of the contract on appeal, reversed the decision, and remanded the case. *See id.* at 630–31, 200 P.3d at 1179–80. We held that a physical address was not a sufficient property description for the purposes of the statute of frauds. *Id.* The Court rejected the buyer's argument that extrinsic evidence could supply a complete legal description of the subject property because the challenged contract did not reference extrinsic evidence in the contract. *Id.* at 630, 200 P.3d at 1179. The Court explained that generally, "[a] description of real property must adequately describe the property so that it is possible for someone to identify 'exactly' what property the seller is conveying to the buyer." *Id.* at 629, 200 P.3d at 1178. That is because the physical address alone does not indicate "the quantity, identity, or boundaries of the real property." *Id.* at 630, 200 P.3d at 1179.

The REPSA contained more than a simple street address for the Condominium. It identified the Condominium as "#2," and it referenced the legal description as "Twin Creeks Condos." These distinctions are important.

Condominiums are a distinct classification of property. *Fairway Dev. Co. v. Bannock County*, 113 Idaho 933, 935, 750 P.2d 954, 956 (1988). "A common idiom describes property as a bundle of sticks—a collection of individual rights which, in certain combinations, constitute property." *Herndon v. City of Sandpoint*, 172 Idaho 228, 242, 531 P.3d 1125, 1139 (2023) (citation modified). With respect to the sale or transfer of condominiums, the "bundle of sticks," or under Idaho Code section 55-1509, the "incidents of a condominium grant" are more clearly defined by the Act:

> (a) The physical boundaries of the unit are the interior surfaces of the perimeter walls, floors, ceilings, windows and doors thereof, and the unit includes both the portions of the building so described and the airspace so encompassed. The following are not part of the unit: bearing walls, columns, floors, roofs, foundations, elevator equipment and shafts, central heating, central refrigeration and central air-conditioning equipment, reservoirs, tanks, pumps and other central services, pipes,

9

ducts, flues, chutes, conduits, wires and other utility installations, wherever located, except the outlets thereof when located within the unit. In interpreting the declaration, plat or plats, and deeds, the existing physical boundaries of the unit as originally constructed or as reconstructed in lieu thereof shall be conclusively presumed to be its boundaries rather than the metes and bounds expressed or depicted in the declaration, plat or plats, or deed, regardless of settling or lateral movement of the building and regardless of minor variance between boundaries shown in the declaration, plat or plats, or deed, and the actual boundaries of units in the building.

(b) The common areas are owned by the owners of the condominiums as their interests appear and are set forth in the declaration pursuant to section 55-1505(1)(c)[, Idaho Code].

(c) A nonexclusive right of ingress, egress and support through the common areas is appurtenant to each unit and the common areas are subject to such rights.

I.C. § 55-1509(a)–(c) (brackets in original). The legislature specifically defined the "bundle of sticks" because, as explained, condominium ownership is a hybrid form of interest in real property, entitling an owner to (1) fee simple ownership of a unit and (2) an undivided interest in common with the other unit owners in the common areas. *See* I.C. §§ 55-1503(a), 55-101B. "Unit" is defined as "the separate interest in a condominium," and "common area" is defined as "the entire project excepting all units." I.C. § 55-1503(d), (e). The Act also provides for "limited common areas" such as garages, that are "common areas and facilities designated in the declaration for use of a certain condominium owner or owners to the exclusion, limitation or restriction of others." I.C. § 55-1503(g).

The REPSA listed the Condominium's street address, "419 Crystal Springs Rd.," unit "#2," identified the city and state, and referenced "Twin Creeks Condos" in response to "legally described as." Under Idaho Code section 55-1526, this description is sufficient to identify the Condominium "for all purposes[,]" including the purchase and sale of a condominium. Section 55-1526 does not require more than this.

The Moores make much of the lack of reference to any other documents in the REPSA, such as the plat of record or the declaration, but section 55-1526 does not require reference to the condominium project's plat or declaration containing the legal description of the project. To the extent the Moores claim that the legal description of the Condominium in the REPSA did not comport with the "identifying number, symbol, name or other identification or designation" shown on the plat of record or declaration, they failed to establish any discrepancy.

The Moores assert that the words, "Twin Creeks Condos," in the blank for "legally described as" on the REPSA are misleading because the plural implies there are multiple buildings or units without specifying which one is intended. They point out that the correct name is "Twin Creeks Condominium." This contention is strained. We are unpersuaded that the term "Twin Creeks Condos" is ambiguous or could refer to anything other than "Twin Creeks Condominium," particularly when read in conjunction with the street address, city, state, and zip code provided on the REPSA.

We hold that, under Idaho Code section 55-1526, the property description in the REPSA satisfies the statute of frauds. As a result, we need not reach the McLaughlins' alternative arguments that the REPSA is enforceable under the doctrine of part performance or that the Moores improperly used the statute of frauds strategically as a sword to escape liability. *Compare Tricore Invs., LLC v. Est. of Warren ex rel. Warren*, 168 Idaho 596, 612, 485 P.3d 92, 108 (2021) ("The interest and purpose of the statute of frauds is not served by the [seller] using it as a sword against [the developer] to escape its own breach of contract." (dictum)), *with Geringer Cap. v. Taunton Props., LLC*, 172 Idaho 95, 101, 529 P.3d 760, 766 (2023) (declining to follow dictum in *Tricore*). Accordingly, we affirm the district court's decision to dismiss the Moores' statute of frauds defense.

## B. The district court erred when it dismissed the McLaughlins' specific performance remedy.

On simultaneous motions for summary judgment, the district court granted the Moores' motion for partial summary judgment, which dismissed the McLaughlins' specific performance remedy. Based on *Kessler v. Pruitt*, 14 Idaho 175, 93 P. 965 (1908), the court explained that where a real estate contract contains a "time is of the essence" clause, a tender of the full purchase price was required to place the Moores in default. The court acknowledged that the McLaughlins deposited their own funds in escrow and that the lender's transfer of funds may have been futile, given that "the Moores made clear they had no intent of closing." Yet, the court determined that the remedy of specific performance was not available to the McLaughlins, reasoning that

> [e]ven though the McLaughlins can show they were ready, willing, and able to perform their obligations, it is not enough in a "time is of the essence" contract. In order to avail themselves of the extraordinary remedy of specific performance, the McLaughlins were required to tender the full $525,000 in escrow on the day of closing. The parties agree [that] the McLaughlins did not tender full payment on January 5, 2021.

On appeal, the parties dispute a threshold issue concerning the applicable standard of review for this issue. The Moores argue that the decision to grant or deny specific performance is a discretionary decision of the trial court; therefore, it can only be reviewed for an abuse of discretion. The McLaughlins, on the other hand, contend that because the district court dismissed the remedy based solely on a legal determination—whether a valid tender was required at closing—the issue presents a question of law, which this Court reviews de novo.

We agree with the McLaughlins. Although the Moores are correct that the decision to grant or deny specific performance is discretionary, the district court's decision did not depend on the particular facts and circumstances of the case. *Compare Kessler v. Tortoise Dev., Inc.*, 134 Idaho 264, 270–71, 1 P.3d 292, 298–99 (2000) (trial court granted specific performance to the buyer who had run a theater for 20 years and invested substantial construction costs, after finding the property "unique" due to its location for a four-plex theatre), *with Watkins v. Paul*, 95 Idaho 499, 501, 511 P.2d 781, 783 (1973) (trial court denied specific performance to the holders of an option contract since the proposed buyer had no "unique purpose" in obtaining the land but merely wanted to "resell it for profit"). The court's conclusion that specific performance was not available to the McLaughlins was based on its misinterpretation of the law concerning tender. In other words, the district court did not determine that specific performance was not an appropriate remedy in this case after weighing equitable factors between the parties; rather, the court's decision turned on a question of law concerning tender and time-is-of-the-essence provisions. "This Court exercises free review over questions of law." *O'Connor v. Harger Constr., Inc.*, 145 Idaho 904, 908–09, 188 P.3d 846, 850–51 (2008) (citing *Robinson v. State Farm Mut. Auto. Ins. Co.*, 137 Idaho 173, 176, 45 P.3d 829, 832 (2002)).

Turning to the merits, "[s]pecific performance is an extraordinary remedy that can provide relief when legal remedies are inadequate." *Tortoise*, 134 Idaho at 270, 1 P.3d at 298 (citation omitted). "There is no legal right to specific performance." *Id.* (citing *Suchan v. Rutherford*, 90 Idaho 288, 410 P.2d 434 (1966)). It is generally recognized that in an action by the buyer against the seller for breach of a real estate purchase and sale agreement, there is no adequate remedy at law due to the perceived uniqueness of land. *Id.* (citing *Perron v. Hale*, 108 Idaho 578, 701 P.2d 198 (1985)); *see also Fazzio v. Mason*, 150 Idaho 591, 597, 249 P.3d 390, 396 (2011) (recognizing the presumption that damages are inadequate when land is involved due to the uniqueness of land).

The McLaughlins assert that the district court erred in applying *Pruitt* because our decision in *Tortoise* held that a buyer "is not required to tender payment where such a tender would be futile." *Tortoise*, 134 Idaho at 269, 1 P.3d at 297. The McLaughlins highlight the Moores' behavior, such as forbidding inspections, refusing to attend the closing, and explicitly stating they no longer intended to proceed with the sale, as clear signs of repudiation. The McLaughlins maintain that they were "ready, willing, and able" to tender the full purchase price at closing.

The Moores respond that since the sale proceeds were never available to them, the district court correctly exercised its discretion in denying specific performance. They highlight that the REPSA defines "closing" as occurring when the deed and instruments were recorded and "the sale proceeds [were] available to SELLER." The Moores' argument is unavailing.

Paragraph 36 of the REPSA provides as follows:

> **36. CLOSING:** On or before the closing date, BUYER and SELLER shall deposit with the closing agency all funds and instruments necessary to complete this transaction. Closing means the date on which all documents are either recorded or accepted by an escrow agent and the sale proceeds are available to SELLER.

This provision, at first glance, may suggest that the deposit of all funds is a condition precedent. "A condition precedent is an event not certain to occur, but which must occur, before performance under a contract becomes due." *Dengler v. Hazel Blessinger Fam. Tr.*, 141 Idaho 123, 128, 106 P.3d 449, 454 (2005) (citing *Steiner v. Ziegler Tamura Ltd.*, 138 Idaho 238, 242, 61 P.3d 595, 599 (2002)). However, the McLaughlins' obligation to deposit all funds with the closing agent coincided with the Moores' duty to deposit all instruments necessary with the closing agent. The conditions are concurrent. *See Marshall v. Gilster*, 34 Idaho 420, 428, 201 P. 711, 713 (1921) ("In case of doubt, and where it can be done without doing violence to the language of the contract, the courts held that the conditions of payment and conveyance are concurrent." (citing 2 Williston on Contracts § 835)). Because the Moores never performed their part of that exchange, the McLaughlins' duty to deposit all funds never arose. *See Richards v. Jarvis*, 41 Idaho 237, 248, 238 P. 887, 890 (1925) ("Even if time be considered as of the essence in the present case, and the vendee here was in default in not depositing in escrow his notes and mortgages, nevertheless the vendors treated the contract as being still effective, and neither party could have put the other in default without a tender of performance.").

Next, the Moores argue that Idaho law has long required an actual, timely tender when a contract provides that time is of the essence before specific performance becomes available. They

stress that the McLaughlins failed to tender the full purchase price of $525,000 on January 5, 2021. This argument is also unavailing.

When a contract declares that "time is of the essence," the purchaser must ordinarily make an actual tender to place the seller in default. *Pruitt*, 14 Idaho at 184–85, 93 P. at 968–69. This Court defines "tender" as "[t]he unconditional offer of a [buyer] to the [seller] of the amount of his debt." *Indian Springs LLC v. Indian Springs Inv., LLC*, 147 Idaho 737, 749, 215 P.3d 457, 469 (2009) (quoting *Dohrman v. Tomlinson*, 88 Idaho 313, 318, 399 P.2d 255, 258 (1965)).

> A mere offer to pay does not constitute a valid tender, the law requires that the tenderer have the money present and ready, and produce and actually offer it to the other party. Tender implies the physical act of offering the money or thing to be tendered, but this cannot rest in implication alone. The law requires an actual, present, physical offer; it is not satisfied by a mere spoken offer to pay, which, although indicative of present possession of the money and intention to produce it, is unaccompanied by any visible manifestation of intention to make the offer good.

*Allied Invs., Inc. v. Dunn*, 104 Idaho 764, 765, 663 P.2d 300, 301 (1983) (quoting *Pollard Oil Co. v. Christensen*, 103 Idaho 110, 116, 645 P.2d 344, 350 (1982)).

In this case, the McLaughlins not only demonstrated that they were ready, willing, and able to perform, but they had $525,000 "present and ready" on the closing date. After they initially signed the REPSA, the McLaughlins paid $10,000 in earnest money, then applied for a mortgage loan. As a condition of the loan, the Condominium needed to be appraised to determine its value. Mr. McLaughlin paid for Aspenwood Appraisal to complete the appraisal in December 2020. The McLaughlins qualified for a 30-year fixed rate mortgage with a 2.5 percent interest rate. Leading up to January 5, 2021, the McLaughlins' lender, Rivermark Community Credit Union, approved them for a conventional loan to finance $393,750 for the Condominium. The day before closing, the McLaughlins wired $127,407.95 of their own funds as their down payment to the Pioneer Title Company. The McLaughlins also traveled to Pioneer Title in Coeur d'Alene to sign the necessary documents.

The lender did not deposit the remainder of the full purchase price into escrow because the Moores refused to attend the closing and sign the necessary documents. A party that causes or prevents the occurrence of a condition cannot rely on its non-occurrence to benefit from that failure. *See Dengler*, 141 Idaho at 128, 106 P.3d at 454; *see also* 3A Corbin on Contracts § 767 (1960) ("One who unjustly prevents the performance or the happening of a condition of his own promissory duty thereby eliminates it as such a condition. He will not be permitted to take

advantage of his own wrong, and to escape from liability for not rendering his promised performance by preventing the happening of the condition on which it was promised."). At the trial, the senior mortgage loan officer for Rivermark testified that the lender did not wire the remaining $393,750 because the Moores did not show up at the closing to sign their part of the necessary documents:

> [McLaughlins' Counsel:] Okay. So if I understand your testimony, Rivermark doesn't wire the loan proceeds to the escrow company, in this case Pioneer Title, unless and until both parties have signed all the documents necessary to complete the transaction?
>
> [Loan Officer:] Yes, because the escrow instructions say that they have to have a bargain and sale deed recorded.
>
> [McLaughlins' Counsel:] Okay. And in this particular case, did Rivermark ever wire the loan proceeds to Pioneer Title?
>
> [Loan Officer:] No.
>
> [McLaughlins' Counsel:] Why not?
>
> [Loan Officer:] Because we never received the documents back. The McLaughlins had their down payment and they signed their documents, but we never received an executed bargain and sale deed.
>
> [McLaughlins' Counsel:] In other words, you never received any documents signed by the sellers?
>
> [Loan Officer:] Correct.

The record shows that the McLaughlins had performed every act required of them under the REPSA to complete the sale. If the Moores had performed their part of the REPSA, they would have received the full purchase price of $525,000. In summary, the McLaughlins were not only ready, willing, and able to perform, but they actually *did* perform by providing a valid tender on January 5, 2021. The only missing piece was the lender's transmission of the loan proceeds. The failure to transmit the funds was not due to the McLaughlins' conduct but instead was due to the Moores' repudiation of the contract, failure to attend the closing, and refusal to sign any conveyance documents. The Moores are not entitled to claim the McLaughlins failed to tender the full purchase price when the Moores prevented that very occurrence.

We hold that the district court erred as a matter of law in dismissing the McLaughlins' specific performance remedy. Accordingly, we reverse the district court's decision on specific performance, and remand the case to the district court to balance the equities between the parties and determine whether the McLaughlins are entitled to specific performance. *P.O. Ventures, Inc.*

*v. Louks Fam. Irrevocable Tr.*, 144 Idaho 233, 237, 159 P.3d 870, 874 (2007) ("When making its decision the court must balance the equities between the parties to determine whether specific performance is appropriate."). To be clear, we hold that under the circumstances, specific performance is a remedy that is available to the McLaughlins. Whether, on balancing the equities, the McLaughlins should be awarded specific performance, is a decision for the district court on remand. However, if the court grants specific performance, then the district court must vacate the jury's $25,000 damages award to the McLaughlins.

**C. The district court did not err in awarding attorney fees to the McLaughlins.**

On cross appeal, the Moores argue that the district court erred when it awarded the McLaughlins attorney fees and costs, finding that they were the prevailing party. Generally, "[a]ttorney fees are allowed when they are provided for by a contract." *Gangi v. Debolt*, 168 Idaho 815, 819, 488 P.3d 483, 487 (2021). "Where a valid contract between the parties contains a provision for an award of attorney fees, the terms of the contract establish a right to attorney fees." *Id.* (quoting *Primera Beef, LLC v. Ward*, 166 Idaho 180, 189, 457 P.3d 161, 170 (2020)).

Both parties agree that the REPSA has a fee-shifting clause that applies under paragraph 29 of the REPSA. The REPSA's attorney fees provision provides for mandatory attorney fees to a "party" to the REPSA if they initiate or defend a legal action that is "in any way connected with" the REPSA and if they are the "prevailing party":

> **29. ATTORNEY'S FEES:** If either party initiates or defends any arbitration or legal action or proceedings which are in any way connected with this Agreement, the prevailing party shall be entitled to recover from the non-prevailing party reasonable costs and attorney's fees, including such costs and fees on appeal.

Pursuant to this provision, the district court determined that the McLaughlins were the prevailing party and awarded them $170,509.50 in attorney fees and $7,422.28 in costs.

The Moores' challenge to the district court's attorney fees award is twofold. First, the Moores maintain that they, not the McLaughlins, are the prevailing party. Next, the Moores argue that the amount of attorney fees awarded was unreasonable. We address each argument in turn.

*1. The district court did not err when it determined that the McLaughlins were the prevailing party.*

The prevailing party determination is committed to the district court's "sound discretion," which this Court reviews under an abuse of discretion standard. *City of Middleton v. Coleman Homes, LLC*, 163 Idaho 716, 722, 418 P.3d 1225, 1231 (2018) (citation omitted). We have said that "[t]his Court will only reverse the district court's determination of which party prevailed in

16

the 'rarest of circumstances.'" *Id.* at 723, 418 P.3d at 1232 (quoting *Oakes v. Boise Heart Clinic Physicians, PLLC*, 152 Idaho 540, 543, 272 P.3d 512, 515 (2012)).

The Moores argue that the district court abused its discretion when it determined that the McLaughlins were the prevailing party. They characterize the parties' dispute over "who gets the condo" as the primary issue of the case. They contend that even though the jury found that the Moores breached the REPSA, they still prevailed on specific performance allowing them to retain the Condominium. In the Moores' view, specific performance and contract damages are distinct claims rather than alternative remedies. As an alternative argument, the Moores argue that, at best, neither party prevailed, since both succeeded in part and failed in part. They assert that the court's reasoning improperly minimized the significance of their success on the specific performance issue.

In response, the McLaughlins argued in the district court, and again on appeal, that they prevailed because the jury found that the Moores breached the contract and awarded damages. They further maintain that their pursuit of specific performance did not prevent them from being the prevailing party because they succeeded on the primary issue of whether the Moores breached the REPSA, which was a valid and enforceable contract between the parties.

We have explained that "to the extent a contract affords a party the right to recover its attorney fees when it has prevailed on a specific claim, the overall prevailing party standard of [Idaho Rule of Civil Procedure] 54 does not apply." *Miller v. Rocking Ranch No. 3 Prop. Owners' Ass'n, Inc.*, 173 Idaho 359, 373, 541 P.3d 1279, 1293 (2024). Instead, "the determination of whether the party is entitled to recover its fees under the contract is a claim-by-claim determination that examines whether the party seeking fees recovered on each claim covered by the contractual attorney fee provision." *Id.* "The terms of that contractual provision establish a right to an award of attorney fees and costs." *VanRenselaar v. Batres*, ___ Idaho ___, ___, 575 P.3d 866, 886 (2025) (quoting *Tricore Invs., LLC v. Est. of Warren ex rel. Warren*, 168 Idaho 596, 626–27, 485 P.3d 92, 122–23 (2021).

We hold that the district court did not err in determining that the McLaughlins prevailed. Although the district court relied on the Idaho Rule of Civil Procedure 54(d)(1)(B) factors and our decision in *Tricore*, its decision was correct. The Moores' assertion that specific performance and contract damages are distinct claims rather than alternative remedies is mistaken. *See Kessler v. Tortoise Dev., Inc.*, 134 Idaho 264, 270, 1 P.3d 292, 298 (2000) ("[I]nadequacy of remedies at law

17

is presumed in an action for breach of a [REPSA] due to the perceived uniqueness of land."); *see also Fazzio v. Mason*, 150 Idaho 591, 597, 249 P.3d 390, 396 (2011) (recognizing that when land is involved due to the "perceived uniqueness of land" there is a presumption that damages are inadequate). We also note that the McLaughlins filed a "Complaint for Specific Performance of Real Estate Contract and for Damages for Breach of Contract" alleging one cause of action— breach of contract. In the prayer for relief, the McLaughlins sought damages in an amount to be proven at a trial, an order for specific performance enforcing the REPSA, and attorney fees and costs. The Moores' answer did not allege any counterclaims to consider for the prevailing party analysis. Rather, they asserted numerous affirmative defenses that were ultimately unsuccessful. Although on remand the district court still must determine whether the McLaughlins are entitled to the remedy of specific performance after balancing the equities between the parties, the McLaughlins prevailed on the only claim in this case.

Inasmuch as the McLaughlins prevailed on the single cause of action—breach of contract—they were the prevailing party and the district court appropriately awarded them attorney fees under the REPSA.

2. *The district court did not abuse its discretion in determining the amount of attorney fees.*

After the district court concluded the McLaughlins were the prevailing party, the district court awarded the McLaughlins $170,509.50 in attorney fees. On appeal, the Moores challenge the reasonableness of the attorney fees awarded. They did not advance any argument regarding the reasonableness of the McLaughlins' costs; therefore, our review is confined to attorney fees.

"When awarding attorney's fees, a district court must consider the applicable factors set forth in [Rule] 54(e)(3) *and may consider any other factor that the court deems appropriate*." *616 Inc.*, 171 Idaho at 625, 524 P.3d at 904 (citing *Parsons v. Mut. of Enumclaw Ins. Co.*, 143 Idaho 743, 747, 152 P.3d 614, 618 (2007)). "Courts need not address every factor under Rule 54(e)(3) in writing, but it must appear that there is a reasoned application of those factors in the trial court's decision on the amount of attorney fees to be awarded." *Id.* (internal quotation marks and citations omitted). "The burden is on the party opposing the award to demonstrate that the district court abused its discretion." *Parsons*, 143 Idaho at 747, 152 P.3d at 618 (quoting *E. Idaho Agric. Credit Ass'n v. Neibaur*, 133 Idaho 402, 412, 987 P.2d 314, 324 (1999)).

The Moores present three arguments on cross-appeal to support their claim that the district court's award was unreasonable. They first argue that the fees incurred in connection with the

18

McLaughlins' omnibus motion for summary judgment were excessive and that, instead of awarding those fees, the district court should have granted the Moores attorney fees under Idaho Code section 12-123. They contend that the McLaughlins filed an "overly voluminous" motion without merit that "flood[ed] the record with a host of duplicate filings" after the district court previously identified genuine issues of material fact that warranted a trial.

The Moores did not preserve their first argument for appeal because they did not raise it before the district court in support of their motion to disallow attorney fees. "[A] party preserves an issue for appeal by properly presenting the issue with argument and authority to the trial court below and noticing it for hearing[.]" *State v. Miramontes*, 170 Idaho 920, 924–25, 517 P.3d 849, 853–54 (2022). A party may also preserve an issue for appeal when the trial court issues an adverse ruling. *Id.* We explained:

> To properly preserve and present to this [C]ourt claimed errors of this nature, timely and proper objection should be made, first so the trial court may have an opportunity to prevent or if possible eradicate such error . . . , and second, that there be adverse ruling or action by the trial court for review by this court.

*Id.* at 925, 517 P.3d at 854 (first alteration in original) (citation omitted). Moreover, "[a]n issue is not preserved when a party argues under a different theory on appeal than the one argued before the district court." *Streamline Builders, LLC v. Chase*, 174 Idaho 756, 771, 560 P.3d 508, 514 (2024) (citing *Kosmann v. Dinius*, 165 Idaho 375, 386, 446 P.3d 433, 444 (2019)).

In arguing their motion to disallow attorney fees to the district court, the Moores challenged specific fee entries itemized in exhibits attached to their memorandum in support of the motion to disallow fees. They contested the attorney fees the McLaughlins incurred related to settlement negotiations and mediation, pro hac vice admission of out-of-state counsel, travel to the Condominium in Sandpoint, communications with individuals unrelated to the case, preparation for the September 2023 trial date that the court rescheduled, and the increased hourly rates that two attorneys charged in 2023 and 2024. They argued, in the alternative, that if the district court awarded any attorney fees, they should be proportionate to the relief the McLaughlins ultimately obtained.

The Moores did not identify or dispute any attorney fees associated with the omnibus motion for summary judgment, nor did they file a motion under Idaho Code section 12-123 for defending against the omnibus motion. Instead, their response to the omnibus motion sought sanctions under Idaho Rules of Civil Procedure 11 and 11.2, asserting that the motion repeated

issues previously decided by another judge. The district court denied the Moores' motion for sanctions. In resolving the Moores' motion for partial summary judgment and the McLaughlins' omnibus motion, the court noted that the Moores had requested reconsideration of the earlier statute of frauds decision regarding the adequacy of the property description. The court stated that the Moores had "already had three bites at the apple" to argue that issue and noted that the Moores' conduct resembled the conduct they attributed to the McLaughlins that implicated Rule 11.2.

We decline to address the Moores' first argument because the Moores did not raise in the district court the specific argument they now advance concerning the reasonableness of fees associated with the omnibus motion, and because the sanctions argument rests on a different legal theory, the issue was not preserved.

Second, the Moores argue that attorney fees related to the equitable claim are unreasonable because the McLaughlins did not prevail on that claim. This argument fails for the reasons discussed in our review of the prevailing party determination.

Finally, the Moores' third argument that the district court impermissibly interjected its own equitable views into its determination of the attorney fee amount is unavailing. To support their argument, the Moores cite to this Court's decision in *Eighteen Mile Ranch, LLC v. Nord Excavating & Paving, Inc.*, 141 Idaho 716, 720, 117 P.3d 130, 134 (2005), where we stated that a "court may not use the award or denial of attorney fees to vindicate [its] sense of justice beyond the judgment rendered on the underlying dispute between the parties."

Attempting to make a similar argument here, the Moores contend that the district court's award of "nearly $200k in attorney fees and costs on a $25,000.00 contract damages judgment" to the McLaughlins, "appears to be the [court's] method of balancing the outcome of this case." The Moores do not reference any language in the district court's decision suggesting that improper considerations influenced the district court's attorney fees decision. Rather, they merely speculate that the district court "adjust[ed] the result because the McLaughlins could not be awarded specific performance and the contract damages . . . were so minimal." The Moores' assumption is unfounded.

The district court addressed each contested category of fees. The court allowed attorney fees for settlement and mediation as "a reasonable part of pursuing the McLaughlins' claim for breach of contract" and the parties were court ordered to complete mediation. The court declined to "second-guess an attorney's strategy in preparing their case" or counsel's fees associated with

20

the visit to the Condominium. Based on the McLaughlins' concession that attorney fees related to communications with three specific individuals who were not relevant to the case, the court deducted $381 from the McLaughlins' attorney fees award. The court allowed fees related to pro hac vice admission as contractual costs under the REPSA, or, in the alternative, as discretionary costs permitted by Rule 54(d)(1)(D) of the Idaho Rules of Civil Procedure. Finally, the court declined to apply the increased hourly rate retroactively, reducing two attorneys' rates to $285 per hour based on the amounts actually charged during the relevant period. After making these adjustments, the district court calculated the total allowable fees as $170,509.50.

We have previously issued decisions affirming awards of attorney fees under contractual provisions with language identical to that in paragraph 29 of the REPSA in this case. *See, e.g.*, *VanRenselaar*, ___ Idaho at ___, 575 P.3d at 886–87; *McOmber v. Thompson*, ___ Idaho ___, ___, 572 P.3d 736, 752–53 (2025). Although the district court's decision did not expressly address every Rule 54(e)(3) factor, its analysis reflects a reasoned application of those considerations. *See 616 Inc.*, 171 Idaho at 625, 524 P.3d at 904. The district court acted within its discretion in determining the amount of attorney fees. The burden is on the Moores to demonstrate the district court misapplied the Rule 54(e)(3) factors or otherwise abused its discretion. *Hurtado v. Land O'Lakes, Inc.*, 153 Idaho 13, 17, 278 P.3d 415, 419 (2012). The Moores have not met that burden. We therefore affirm the award of $170,509.50 in attorney fees to the McLaughlins.

### D. We award the McLaughlins attorney fees and costs on appeal.

Both parties request attorney fees and costs on appeal if they prevail, under the terms of the REPSA. The Moores also seek attorney fees under Idaho Code section 12-121, arguing that the McLaughlins' appeal is frivolous because they are appealing the district court's denial of a motion for summary judgment, which is generally not subject to review.[1] Idaho Code section 12-121 permits the award of reasonable attorney fees to the "prevailing party" when the case was "brought, pursued or defended frivolously, unreasonably or without foundation." I.C. § 12-121. The Moores are not the prevailing party on appeal and, therefore, are not entitled to attorney fees under Idaho Code section 12-121.

---

[1] The Moores' argument is inaccurate. The McLaughlins' appeal asks this Court to reverse the district court's decision, denying their omnibus motion for summary judgment and granting the Moores' motion for partial summary judgment. Specific performance was a disputed issue in both motions, and the district court resolved it by dismissing the McLaughlins' specific performance remedy.

This Court may award reasonable attorney fees to the prevailing party in a civil action "when provided for by any statute or contract." I.R.C.P. 54(e)(1). "Where there is a valid contract between parties which contains a provision for an award of attorney fees and costs, the terms of that contractual provision establish a right to an award of attorney fees and costs." *Humphries v. Becker*, 159 Idaho 728, 739, 366 P.3d 1088, 1099 (2016)). More specifically, attorney fees "can be awarded to a prevailing party pursuant to a purchase and sale agreement." *Id.*

The attorney fees provision of the REPSA, in this case, establishes the prevailing parties' right to reasonable costs and attorney fees, including "costs and fees on appeal." *See* analysis *supra* Section IV.C. We have held that the district court improperly dismissed the McLaughlins' specific performance remedy but properly dismissed the Moores' statue of frauds defense. The McLaughlins prevailed on appeal and cross-appeal. Therefore, they are awarded costs and reasonable attorney fees "in any way connected with" this appeal. Costs are also available to the McLaughlins pursuant to Rule 40 of the Idaho Appellate Rules.

## V.    CONCLUSION

We affirm the district court's decision to dismiss the Moores' statute of frauds defense. However, we reverse the district court's order granting the Moores' motion for partial summary judgment on specific performance. We affirm the district court's award of attorney fees and costs to the McLaughlins. We remand the case with instruction for the district court to weigh the equities between the parties and determine whether the McLaughlins are entitled to specific performance. Finally, the McLaughlins are awarded attorney fees and costs on appeal.

Chief Justice BEVAN and Justices BRODY, MOELLER and ZAHN CONCUR.